569 S.E.2d 400

Warren BURCH and Kathy Freeman, Respondents,

v.

SOUTH CAROLINA FARM BUREAU MUTUAL INSURANCE COMPANY, Appellant.

No. 3542.

Court of Appeals of South Carolina.

Submitted May 6, 2002.

Decided Aug. 19, 2002.

Robert J. Thomas, of Columbia, for appellant.

William O. Spencer, Jr., of Chesterfield; and Stephen R. Suggs, of Columbia, for respondents.

HUFF, Judge:

Warren Burch brought this declaratory judgment action seeking reformation of an insurance policy to include underinsured motorist (UIM) coverage. The special referee found the insurer, South Carolina Farm Bureau Mutual Insurance Company (Farm Bureau), failed to make an effective offer of UIM coverage and reformed the policy because it did not specifically offer amounts less than the minimum liability limits carried by the insured. Farm Bureau appeals. We reverse.[1]

---

1. We decide this case without oral argument pursuant to Rule 215, SCACR.

## FACTUAL/PROCEDURAL BACKGROUND

Burch is seeking UIM coverage for an automobile accident that occurred on October 22, 1995 when he was struck by an at-fault motorist whose insurance did not cover all of his losses. Freeman was a passenger in Burch's vehicle.

At the time of the accident, Burch was driving a 1993 Toyota Tercel which was insured by Farm Bureau under Policy No. 805760. The policy carried bodily injury liability limits of $50,000/$100,000, but the declaration page did not list any UIM coverage.

Burch originally obtained the policy in question in January 1986 for coverage on a 1985 Chevrolet Chevette. On the 1986 application, the blocks for uninsured (UM) and UIM coverages listed no coverage, and these blocks were initialed by Burch where he rejected the coverage. In January 1988, Farm Bureau sent a separate offer form to Burch, which he signed rejecting UIM coverage. He checked the box which provided, "I want only the minimum UM benefits. I understand NO UIM benefits are provided."

After the enactment of S.C.Code Ann. § 38–77–350, Farm Bureau made a new offer of UIM coverage to Burch in November 1989 on a form approved by the South Carolina Department of Insurance. Burch signed the form on December 4, 1989, again rejecting UIM coverage.

In 1993, Burch purchased the 1993 Toyota Tercel and transferred coverage from the Chevrolet to the Toyota. Burch also added comprehensive and collision coverages to his policy at that time and added a lienholder.

After his automobile accident in October 1995, Burch brought this declaratory judgment action seeking reformation of the insurance policy to include UIM coverage for the accident.[2] The matter was referred to the special referee with finality. The referee found Farm Bureau did not make a meaningful offer of UIM coverage because Farm Bureau "failed to offer UIM coverage in amounts less than the minimum liability limits, which were [Burch's] liability limits

---

2. By consent of all parties, Freeman was added as a party plaintiff based on her interest in coverage as a passenger. All references to "Burch" shall also include Freeman where appropriate.

at the time the form was signed." The referee reformed Burch's policy to include UIM coverage in the amounts of $50,000/$100,000, which were his liability limits at the time of the accident. Farm Bureau appeals.

## LAW/ANALYSIS

Farm Bureau contends the referee erred in finding it did not make a meaningful offer of UIM coverage to Burch. We agree.

■ Section 38–77–160 provides automobile insurance carriers shall offer, "at the option of the insured, underinsured motorist coverage up to the limits of the insured['s] liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist. . . ." S.C.Code Ann. § 38–77–160 (2002). This statute mandates that "underinsured motorist coverage in any amount *up to the insured's liability coverage* must be offered to a policyholder." *Garris v. Cincinnati Ins. Co.*, 280 S.C. 149, 154, 311 S.E.2d 723, 726 (1984) (emphasis added).

■ The initial burden is on the insurer to prove a meaningful offer of optional coverage has been made to the insured. *Butler v. Unisun Ins. Co.*, 323 S.C. 402, 475 S.E.2d 758 (1996). If the insurer fails to comply with its statutory duty to make a meaningful offer of UIM coverage to the insured, the policy will be reformed, by operation of law, to include such coverage up to the limits of liability insurance carried by the insured. *Id.* A noncomplying offer has the legal effect of no offer at all. *Id.*

In *State Farm Mut. Auto. Ins. Co. v. Wannamaker*, 291 S.C. 518, 354 S.E.2d 555 (1987), our supreme court held "the statute mandates the insured to be provided with adequate information, and in such a manner, as to allow the insured to make an intelligent decision of whether to accept or reject the coverage." *Id.* at 521, 354 S.E.2d at 556. The *Wannamaker* court expressly adopted a four-part standard to determine whether an insurer has complied with its duty to offer the optional coverage: "(1) the insurer's notification process must be commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and

not merely offer additional coverage in general terms; (3) the insurer must intelligently advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium." *Id.*

In 1989, the South Carolina Legislature enacted § 38–77–350, which provides in pertinent part as follows:

(A) The director or his designee shall approve a form which automobile insurers shall use in offering optional coverages required to be offered pursuant to law to applicants for automobile insurance policies. This form must be used by insurers for all new applicants. The form, at a minimum, must provide for each optional coverage required to be offered:

(1) a brief and concise explanation of the coverage,

(2) a list of available limits and the range of premiums for the limits,

(3) a space for the insured to mark whether the insured chooses to accept or reject the coverage and a space for the insured to select the limits of coverage he desires,

(4) a space for the insured to sign the form which acknowledges that he has been offered the optional coverages,

(5) the mailing address and telephone number of the Insurance Department which the applicant may contact if the applicant has any questions that the insurance agent is unable to answer.

(B) If this form is properly completed and executed by the named insured it is conclusively presumed that there was an informed, knowing selection of coverage and neither the insurance company nor any insurance agent has any liability to the named insured or any other insured under the policy for the insured's failure to purchase any optional coverage or higher limits.

(D) Compliance with this section satisfies the insurer and agent's duty to explain and offer optional coverages and higher limits and no person, including, but not limited to, an insurer and insurance agent is liable in an action for dam-

ages on account of the selection or rejection made by the named insured.

S.C.Code Ann. § 38–77–350 (2002).

The cover letter Farm Bureau sent to Burch in 1989 instructed the insured to contact his or her agent if there were any questions about the form or policy coverages, limits, or rates, and directed the insured to read the instructions before filling out the form. Section I of the enclosure, entitled "EXPLANATION OF COVERAGES," stated in pertinent part:

> Your automobile insurance policy does not automatically provide any underinsured motorist coverage. You have, however, a right to buy underinsured motorist coverage *in limits up to the limits of liability coverage* you will carry under your automobile insurance policy. Some of the more commonly sold limits of underinsured motorist coverage, together with the additional premiums you will be charged, are shown upon this Form. *If there are other limits in which you are interested, but which are not shown upon this Form, then fill in those limits.* If your insurance company is allowed to market those limits within this State, your insurance agent will fill in the amount of increased premium. (Emphasis added.)

The explanation portion of the form also informed the insured he could increase or decrease his UIM coverage in the future.

Following the above section, Section III, entitled "OFFER OF *UNDER* INSURED MOTORIST COVERAGE," listed various split limits and premium amounts as follows:

| Limits of Coverage | Amount of Increased Premium (These increased premium charges must be filled in by your insurance agent prior to your decision and signature.) |
| --- | --- |
| $ 15,000/$ 30,000/$15,000 | $ 4.76 |
| $ 25,000/$ 50,000/$25,000 | $ 8.65 |
| $ 50,000/$100,000/$25,000 | $12.17 |
| $100,000/$300,000/$50,000 | $18.81 |
| /    / | $ |
| $250,000/$500,000/$50,000 | $27.66 |

Do you wish to purchase the coverage,
"Underinsured Motorist Coverage"?    Yes      No

If your answer is "no" you have rejected this coverage and you must sign here:

If your answer is "yes," then you must specify the limits you desire. These limits cannot exceed your automobile liability limits.
I select     /     /     .

Burch placed an "x" on the line indicating he did not wish to purchase UIM, and signed his name on the following line.

In this case, the referee found Burch's liability limits at the time of the 1989 UIM offer were $15,000/$30,000, based on a reconstruction of the offer that was mailed to Burch in November 1989.[3] He determined the form offer included only one blank line on which the insured could write in other limits, and the blank line was positioned between $100,000/$300,000/$50,000 UIM coverage and $250,000/$500,000/$50,000 UIM coverage, such that it failed to indicate "Burch could have selected coverage in an amount less than $15,000/$30,000." He therefore concluded, "Farm Bureau's offer form signed by Mr. Burch, although approved by the Department of Insurance, failed to offer UIM coverage in amounts less than the minimum liability limits, which were his liability limits at the time the form was signed." While the referee acknowledged the text of Farm Bureau's mailing did contain language that the policyholder could increase or decrease his UIM coverage to any amount up to the liability limits of the policy, he concluded that "the offer form signed by Mr. Burch did not list various levels of UIM coverage below the minimum liability limits, which were the insured's stated limits at the time of the offer in 1989." He therefore ruled Farm Bureau failed to meet its burden of proving that it made a meaningful offer of UIM coverage, and he reformed the policy to include UIM coverage of $50,000/$100,000.

---

**3.** Farm Bureau asserts on appeal that the reconstruction of the letter sent to Burch in November 1989 erroneously showed minimum liability limits on Burch's existing policy, and that his limits were actually $50,000/$100,000 in 1989 when Burch rejected the offer of UIM. For purposes of this appeal, we assume Burch carried limits of $15,000/$30,000 as found by the referee.

On appeal, Farm Bureau argues the referee erred in concluding it did not make a meaningful offer of UIM. Farm Bureau contends, consistent with South Carolina law, its Commission-approved form listed optional UIM coverage in five different amounts, included a blank line for the policyholder to write in any amounts desired but not specifically listed, and explained that the policy holder had the right to purchase UIM coverage "up to" the limits of the insured's liability coverage. Farm Bureau argues its offer comes within the parameters of the offers approved in *Norwood v. Allstate Ins. Co.*, 327 S.C. 503, 489 S.E.2d 661 (Ct.App.1997), *Tucker v. Allstate Ins. Co.*, 337 S.C. 128, 522 S.E.2d 819 (Ct.App.1999), and *Rabb v. Catawba Ins. Co.*, 339 S.C. 228, 528 S.E.2d 693 (Ct.App.2000). We agree that the form used by Farm Bureau in this case falls within the requirements of South Carolina's statutory and case law, such that Farm Bureau made a meaningful and effective offer of UIM coverage to Burch.

■ In *Butler v. Unisun Ins. Co.*, 323 S.C. 402, 475 S.E.2d 758 (1996), our supreme court held § 38–77–350 does not modify the requirement of § 38–77–160 that insurance companies offer UIM coverage "up to" the limits of the insured's liability limits. Thus, the insured was entitled to reformation of her policy where the insurer failed to offer coverage below the minimum liability limits of the policy. However, the court also expressly approved the following language from *Osborne v. Allstate Ins. Co.*, 319 S.C. 479, 462 S.E.2d 291 (Ct.App.1995) as satisfying the requirements of § 38–77–350 as they interact with § 38–77–160:

> Some of the more commonly sold limits of underinsured motorist coverage, together with the additional premiums you will be charged, are shown upon this Form. If there are other limits in which you are interested, but which are not shown upon this Form, then fill in those limits. If your insurance company is allowed to market those limits within this State, your insurance agent will fill-in the amount of increased premium.

*Butler*, 323 S.C. at 408, 475 S.E.2d at 761. This exact language was used by Farm Bureau in its offer of UIM coverage to Burch.

In *Norwood*, Allstate specifically offered Norwood three choices of UIM coverage up to Norwood's $25,000/$50,000/$25,000 liability limits: $15,000/$30,000/$5,000, $15,000/$30,000/$10,000, and $25,000/$50,000/$10,000. In addition, Allstate's offer form indicated Norwood could purchase UIM coverage "up to" her liability limits. We found that Allstate's inclusion of at least three specific options of UIM coverage below Norwood's liability limits, coupled with the plain language of Allstate's offer form notifying Norwood that she could increase or decrease her UIM coverage, satisfied the requirements of § 38–77–160. *Norwood*, 327 S.C. at 506–507, 489 S.E.2d at 663.

In *Tucker*, Allstate's form offered five levels of UIM coverage below Tucker's liability limits, and one above, but did not specifically offer the exact same liability limits, nor any limits below the statutorily required minimum limits. This court held the failure of the insurance company to specifically offer the exact amount of liability coverage in its UIM offer did not render the offer invalid because the offer specified that UIM coverage could be purchased with limits up to the limits of liability coverage and informed the insured UIM coverage could be increased or decreased. *Tucker*, 337 S.C. at 131–32, 522 S.E.2d at 821–22.

In *Rabb*, this Court affirmed the lower court's finding of a meaningful offer of UIM coverage where the form included the approved language of *Osborne* and *Butler*. We found the form, which also included "a number of split limit and single limit UIM coverage amounts and their accompanying premium costs," as well as blanks in which to fill in a different coverage and premium amount, provided the insured with the opportunity to select coverage in any amount, including amounts up to the limits of liability coverage. *Rabb*, 339 S.C. at 233–34, 528 S.E.2d at 695–96. As to the assertion that the offer was ineffective because the insurer did not have advance approval to market UIM premium rates under the minimum $15,000 limits, we found this lack of authorization was irrelevant since the offers were meaningful and the insureds expressly rejected them. *Id.* at 234–35, 528 S.E.2d at 696.

After considering the foregoing, the circumstances present in the case at hand lead us to the conclusion that Farm

Bureau's offer of UIM coverage to Burch effectively complied with the prevailing law, in particular with the mandates of §§ 38–77–160 and 38–77–350. Although we find the placement of blank lines between the $100,000/$300,000/$50,000 limits and the $250,000/$500,000/$50,000 limits to be less than ideal, the explanation of coverage on the form contains the precise language approved in *Butler* and *Osborne,* informing the insured that if he is interested in other limits which do not appear with the common examples on the form, he may fill in those amounts and his agent will provide the attendant premium amounts if those limits are marketable within this State. Additionally, there are instructions specifically advising the insured that he may purchase UIM coverage in limits "up to" the limits of his liability coverage. Finally, we note there is another blank line on the form, below the various examples of commonly sold UIM limits, which asks the insured to specify the limits desired, and specifically notes such limits cannot exceed the insured's liability limits.

Based on the foregoing circumstances, we conclude Farm Bureau made a meaningful offer of UIM coverage to Burch. We therefore reverse the referee's order granting reformation of the policy to include UIM coverage.

**REVERSED.**

HOWARD and SHULER, JJ., concur.