584 S.E.2d 154

In the Matter of the ESTATE OF Gordon S. BOYNTON.

Ervin Mathias, as Co–Personal Representative of the Estate of Gordon S. Boynton; Gordon Benjamin Kearse; Loraine K. Clark; James G. Kearse; Esther S. Kearse, as Personal Representative of the Estate of Henry A. Kearse; and June Kearse, as Personal Representative of the Estate of Richard M. Kearse, Respondents,

v.

Janice Taylor Clark, Individually and as Co–Personal Representative of the Estate of Gordon S. Boynton, Appellant.

No. 3662.

Court of Appeals of South Carolina.

Heard March 12, 2003.

Decided July 21, 2003.

James D. Mosteller, of Columbia, for Appellant.

B. Michael Brackett, of Columbia, for Respondents.

STILWELL, J.:

Janice Taylor Clark, the illegitimate daughter of Henry Taylor, appeals the circuit court's decision that the remainder devise to the "child or children" of Taylor in Item I of Gordon Boynton's will did not include illegitimate children. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

Boynton died testate in 1954, devising a life estate in an 860 acre farm to Taylor with the remainder to Taylor's child or children and a contingent remainder to Boynton's heirs at law should Taylor die without children. Taylor died in 1995 with Clark as his only issue. On December 6, 2000, Ervin Mathias, as co-personal representative of Boynton's estate, and Boynton's heirs filed a complaint in probate court seeking a declaratory judgment that Boynton's use of the words "child or children," by definition, excluded Clark because she was illegitimate.[1] By agreement of the parties, the matter was submitted on stipulated facts and briefs to the probate court. The probate court found Clark was the "sole remainderman of the life estate interest" under Boynton's will. Mathias appealed to the circuit court. Clark cross-appealed, alleging the probate court erred in refusing to consider evidence outside the written stipulations. The circuit court dismissed the cross-appeal and reversed the probate court.

## STANDARD OF REVIEW

"When an appeal involves stipulated or undisputed facts, an appellate court is free to review whether the trial court properly applied the law to those facts." *WDW Props. v. City of Sumter,* 342 S.C. 6, 10, 535 S.E.2d 631, 632 (2000). "In such cases, the appellate court owes no particular defer-

---

1. This case overlaps with a closely related paternity action filed by Clark. This court affirmed the family court's finding that Taylor was Clark's father. *Clark v. Clark,* Op. No.2002–UP–145 (S.C. Ct.App. filed Feb. 26, 2002).

ence to the trial court's legal conclusions." *J.K. Constr., Inc. v. W. Carolina Reg'l Sewer Auth.,* 336 S.C. 162, 166, 519 S.E.2d 561, 563 (1999); *see also Duke Power Co. v. Laurens Elec. Coop., Inc.,* 344 S.C. 101, 104, 543 S.E.2d 560, 561–62 (Ct.App.2001). On appeal from the final order of the probate court, the circuit court should apply the same standard of review that the Supreme Court or Court of Appeals would apply on appeal. *In re Howard,* 315 S.C. 356, 361, 434 S.E.2d 254, 257 (1993).

### LAW/ANALYSIS

█ Clark argues the circuit court erred when it applied 1954 law to construe the language of Boynton's will. We disagree.

█ Generally, the provisions of a will and restrictions on the power of testamentary disposition are determined according to the law in effect at the time of the testator's death or the time when the will is executed. 79 Am.Jur.2d *Wills* § 55 (2002); *see* 4 Bowe–Parker, *Page on Wills* § 30.27 (1961 & Supp.2003); 96 C.J.S. *Wills* § 880 (2001). A will speaks at the time of the testator's death. *See, e.g., Shelley v. Shelley,* 244 S.C. 598, 605, 137 S.E.2d 851, 854 (1964); *Landrum v. Branyon,* 161 S.C. 235, 246–48, 159 S.E. 546, 550 (1931). The modern probate code, which took effect in 1987, states "a substantive right in the decedent's estate accrues in accordance with the law in effect on the date of the decedent's death." S.C.Code Ann. § 62–1–100(b)(4) (Supp.2002). Boynton executed his will in August 1954 and died three weeks later. Thus, the law as it existed in 1954 applies.

Clark insists to construe the will the court should apply the law as it existed at the time of the death of the life tenant Taylor. Clark relies on the holding in *Freeman v. Freeman,* 323 S.C. 95, 100–105, 473 S.E.2d 467, 471–73 (Ct.App.1996) and *Haskell v. Wilmington Trust Co.,* 304 A.2d 53 (Del.1973) *superseded by statute as stated in Annan v. Wilmington Trust Co.,* 559 A.2d 1289, 1292 n. 2 (Del.1989). *Freeman* concerned an illegitimate heir who was not permitted to inherit from her putative father because she could not satisfy the condition set out in *Mitchell v. Hardwick,* 297 S.C. 48, 51, 374 S.E.2d 681, 683 (1988) that she conclusively establish

paternity within the statutory timeframe. *Freeman* did not involve a testate estate, will construction, or a determination of whether the date of death law or subsequent law controlled the construction of a will. Further, even though *Haskell* may be persuasive, holdings of the Delaware Supreme Court are not binding on this court. We know no rule or precedent under South Carolina law requiring a testator who makes a devise to a class whose membership could close at a point after the testator's death to contemplate all the changes that could occur in the controlling law subsequent to his death. Thus, the law as it existed in 1954 controls.

Clark argues that the application of more current law would require an equal protection analysis under *Trimble v. Gordon,* 430 U.S. 762, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977), which held it unconstitutional to create legal distinctions between legitimate and illegitimate children's inheritance rights under statutes of descent and distribution, and its progeny. *See Mitchell v. Hardwick,* 297 S.C. 48, 374 S.E.2d 681 (1988); *Wilson v. Jones,* 281 S.C. 230, 314 S.E.2d 341 (1984). In the alternative, Clark urges retroactive application of *Trimble's* equal protection doctrine if the court determines 1954 law controls.

■ The equal protection analysis in *Trimble* is inapplicable. The question before this court is whether Boynton intended to include illegitimate children when he used the term "child or children of Henry Taylor" in his 1954 will. *Trimble* addresses the question of an illegitimate child's right or ability to inherit from the intestate estate of his parent pursuant to a state intestacy statute. No state action or intestacy in this case requires the application of equal protection principles. Equal protection is only implicated where there is state action. *See Lugar v. Edmondson Oil Co.,* 457 U.S. 922, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). Private conduct does not raise an equal protection violation. *See id.* South Carolina law is well settled that a testator may devise his property any way he sees fit, as long as it is not contrary to law or public policy. *See Hellams v. Ross,* 268 S.C. 284, 290, 233 S.E.2d 98, 101 (1977); *Brown v. Drake,* 275 S.C. 299, 270 S.E.2d 130 (1980).

Clark also relies on the public policy advanced by the probate court that applying 1954 common law would be uncon-

stitutional, contrary to *In re Estate of Mercer,* 288 S.C. 313, 317, 342 S.E.2d 591, 593 (1986) (citing *Trimble,* 430 U.S. at 762, 97 S.Ct. 1459) ("The state's interest in the sanctity of marriage is not substantially related to limiting the inheritance rights of a certain class of illegitimate children."). Clark's reliance on *Mercer* is misplaced. *Mercer* found South Carolina Code Annotated § 21–7–480 (1976) unconstitutional on equal protection grounds because it limited what a married man could devise to his mistress or illegitimate child. The facts and result are inapposite to the issue in this case, since no statute prohibits Boynton devising to illegitimate children. Rather, our concern is determining the testator's intent under the intestacy law, which he is presumed to know.

Clark argues the court erred in determining the remainder to Taylor's "child or children" in Boynton's will excluded illegitimate children. We disagree.

Generally, the law provides that the word "children" does not include illegitimate children, except when the testator's intent to include them is clear. 96 C.J.S. *Wills* § 934 (2001). The law of South Carolina in 1954 embraced this view. *See Shearman v. Angel,* 8 S.C.Eq. (Bail.Eq.) 351 (1831) (illegitimate children cannot take with legitimate children where testator devises to "children"); *Wish v. Kershaw,* 8 S.C.Eq. (Bail.Eq.) 353 (1827) (parol or extrinsic evidence cannot be admitted to show testator's intent to include illegitimate takers); *see also* Coleman Karesh, *Wills* 7 (1977) (general rule of construction that gift by will to testator's children or the children of another includes only legitimate children).

Clark argues that *Wish* and *Shearman* are limited to a narrow set of facts where legitimate and illegitimate children are competing to take from the same devise. She cites the court's language in *Wish* that: "If there had been any legitimate children, they would have been understood to be the persons designated [to take as "children"]; but there being none, we are driven to the inquiry, whether there are any persons in existence, who had acquired the reputation of children." Clark interprets the court's opinion to mean that where the only surviving child is illegitimate, then extrinsic evidence may be introduced to prove reputation as a child. Clark then presents the family court's determination and

evidence presented in that case as proof of her reputation as Henry Taylor's illegitimate child.

We decline to accept Clark's interpretation of the holding in *Wish.* In *Wish,* the testatrix died leaving an illegitimate grandchild and several legitimate grandchildren. The issue was whether extrinsic or parol evidence could be admitted to prove there was an illegitimate grandchild and that the testatrix intended to include her. Parol evidence was excluded. The court in *Wish* cited case law that "an illegitimate child was held not to be under the description of a child contained in the Will; although the testator knew the state of the family, and that there were several illegitimate, and no legitimate children."

Both Clark and Taylor were alive in 1954 when Boynton executed his will. Boynton did not choose to designate Clark as a devisee by name or description. He chose instead to leave a remainder interest to the "child or children" of Henry Taylor. "[P]rovisions in a will are presumed to be made with an understanding of, and intent to act pursuant to, law and public policy as it exists when the will is executed...." 80 Am.Jur.2d *Wills* § 1219 (2002). The common law governing testamentary dispositions in 1954 recognized a narrow definition for the terms "child" and "children" to mean only legitimate children. Accordingly, the remainder interest to the "child or children of Henry Taylor" in Boynton's will does not include illegitimate children.

Clark argues the circuit court erred in dismissing her cross-appeal that the probate court erred by refusing to consider evidence outside the parties' agreed stipulation of facts. We disagree.

Clark agreed to submit the matter to the probate court on stipulated facts. She made no objection to limiting the record to the stipulations nor did she reserve the right to present evidence outside of the stipulations. 4 C.J.S. *Appeal & Error* § 185 (1993) (A party who voluntarily acquiesces in or takes a position inconsistent with the right to appeal impliedly waives or is estopped to assert his right to appellate review.). Thus, Clark's cross-appeal was properly dismissed.

**AFFIRMED.**

CURETON and HOWARD, JJ., concur.