606 S.E.2d 468

**MUNICIPAL ASSOCIATION OF SOUTH CAROLINA, Plaintiff,**

v.

**AT & T COMMUNICATIONS OF the SOUTHERN STATES, INC., Defendant.**

**No. 25897.**

Supreme Court of South Carolina.

Heard Oct. 5, 2004.
Decided Nov. 22, 2004.

Robert Erving Stepp, Elizabeth Van Doren Gray, and Robert E. Tyson, Jr., all of Sowell, Gray, Stepp & Laffitte, L.L.C., of Columbia, for Plaintiff.

Belton Townsend Zeigler, of Columbia and James B. Richardson, Jr., of Richardson & Birdsong, of Columbia, for Defendant.

PER CURIAM:

Pursuant to Rule 228, SCACR, we accepted the following question on certification from the United States District Court for the District of South Carolina: "Does South Carolina law allow municipalities to impose by ordinance a 5% per month penalty for the late payment of business license taxes?" We hold South Carolina law allows municipalities to impose such a penalty by ordinance.

## BACKGROUND FACTS [1]

The plaintiff Municipal Association of South Carolina (MASC) is a non-profit organization composed of 229 municipalities in South Carolina.[2] In 1999, the General Assembly enacted the South Carolina Telecommunications Act of 1999(Act), codified at S.C.Code Ann. § 58–9–2200, et. seq. (Supp. 2003). Pursuant to this Act, municipalities can impose a business license tax on telecommunications companies doing business within a municipality. *id.* The amount of the tax is based upon the gross income from retail telecommunications services that either originate or terminate within the municipality and is charged to a service address located within the municipality. *id.* Between 1999 and 2003, the business tax was not to exceed 3/10 of one percent of the gross income for the preceding year. *id.* The tax is due January 1st and considered delinquent if not paid by January 31st. Most of the state's municipalities have authorized the MASC to collect the taxes from the telecommunications businesses and the MASC is to receive 4% of what it collects.

On March 2, 2000, defendant AT & T Communications of Southern States, Inc., (AT & T) paid its telecommunications business taxes for the year 1999 in the amount of $737,686.65. On June 18, 2001, AT & T reported additional gross income for the tax year 1999 and paid $1,025,937.65 in additional business license taxes. AT & T contends MASC refused to accept this payment for nearly six (6) months. In any event, AT & T eventually paid the additional taxes and now the MASC seeks a penalty of $872,047.00.

Additionally, on February 28, 2002, AT & T paid its year 2001 taxes which were due on January 31, 2002. The MASC is seeking a late payment penalty on the 2001 taxes in the amount of $73,560.70 and requesting a statutory audit because the MASC contends that AT & T actually owes more for 2001.

## DISCUSSION

■ This certified question revolves around the powers granted to municipalities. Section 5–7–30 lists the powers

---

1. The facts are based on the factual findings in the district court's certification order. *See* Rule 228, SCACR.

2. Apparently, almost every municipality in South Carolina is a member.

conferred upon municipalities. Specifically, this section provides that a municipality:

> may enact regulations, resolutions, and ordinances, not inconsistent with the Constitution and general law of this State, including ... levy a business license tax on gross income.... The municipal governing body may fix fines and penalties for the violation of municipal ordinances and regulations not exceeding five hundred dollars or imprisonment not exceeding thirty days, or both.

S.C.Code Ann. § 5–7–30 (2004). Additionally, "responsibilities granted local government subdivisions by [the] Constitution and by law shall include those fairly implied and not prohibited by [the] Constitution." S.C. Const. art. VIII, § 17. Furthermore, § 5–7–10 states that "[t]he powers of a municipality shall be liberally construed in favor of the municipality and the specific mention of particular powers shall not be construed as limiting in any manner the general powers of such municipalities." S.C.Code Ann. § 5–7–10 (2004).

> Determining if a local ordinance is valid is essentially a two-step process. The first step is to ascertain whether the county or municipality that enacted the ordinance had the power to do so. If no such power existed, the ordinance is invalid and the inquiry ends. However, if the local government had the power to enact the ordinance, the next step is to ascertain whether the ordinance is inconsistent with the Constitution or general law of this State....

*Hospitality Ass'n v. County of Charleston,* 320 S.C. 219, 224, 464 S.E.2d 113, 116–17 (1995).

■ Clearly, the municipalities have the power to enact these ordinances. *See* S.C.Code Ann. § 58–9–2200 et. seq. The issue is whether these ordinances are inconsistent with state law. "[I]n order for there to be a conflict between a state statute and a municipal ordinance 'both must contain either express or implied conditions which are inconsistent or irreconcilable with each other.... If either is silent where the other speaks, there can be no conflict between them. Where no conflict exists, both laws stand.'" *The Town of Hilton Head v. Fine Liquors,* 302 S.C. 550, 553, 397 S.E.2d 662, 664 (1990) (*quoting McAbee v. Southern Ry. Co.,* 166 S.C. 166, 169–70, 164 S.E. 444, 445 (1932)).

 Furthermore, the words of the statute must be given their plain and ordinary meaning without resorting to subtle or forced construction to limit or expand the statute's operation. *Hitachi Data Sys. Corp. v. Leatherman*, 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992). The language must also be read in a sense which "harmonizes with its subject matter and accords with its general purpose." *id.* (citations omitted).

 Section 5–7–30 specifically provides for a $500 maximum fine and/or imprisonment for thirty (30) days for a violation of a municipality's ordinance. The fine is not explicitly designated as either civil or criminal. MASC contends the reference is to only a criminal penalty and that the power to impose a civil penalty is implied. AT & T contends the $500 limit applies to both civil and criminal penalties.

Giving the words of § 5–7–30 their ordinary meaning and harmonizing the language with its subject matter, we conclude the term "fine" in 5–7–30 applies only to criminal fines. By including the reference to a maximum term of imprisonment, the General Assembly obviously was contemplating a maximum criminal fine. *See* 36A C.J.S. Fines § 9 (2004) ("A statute providing that on a conviction the party guilty of violating it shall be fined or imprisoned or both ordinarily contemplates a criminal proceeding only.") Furthermore, merely because a criminal remedy has been specifically authorized does not mean the General Assembly meant this to be the exclusive manner by which municipalities could enforce ordinances. As noted above, the powers of a municipality are to be liberally construed and include those fairly implied and not prohibited by the Constitution. S.C. Const. art. VIII, § 17; S.C.Code Ann. § 5–7–10. The power of the municipalities to impose a civil fine for a violation of its ordinances is fairly implied and not prohibited. Therefore, in conclusion, we find these ordinances are not inconsistent with state law. Accordingly, we answer the certified question affirmatively: South Carolina law allows municipalities to impose by ordinance a 5% per month penalty for the late payment of business license taxes.

We also note that although the issues of reasonableness and constitutionality of such a fine are apparently at issue in this case, we are limited to answering only the certified question

before us. Therefore, we specifically express no view as to the reasonableness or constitutionality of the fine imposed.

**QUESTION ANSWERED.**

TOAL, C.J., MOORE, WALLER, BURNETT and PLEICONES, JJ., concur.