663 S.E.2d 61

GRINNELL CORPORATION d/b/a Grinnell
Fire Protection, Appellant/Respondent,

v.

John WOOD, Respondent,

and

American Home Assurance Company, Respondent/Appellant,

and

Government Employees Insurance Company, Respondent.

No. 4355.

Court of Appeals of South Carolina.

Heard Feb. 5, 2008.
Decided March 11, 2008.
Rehearing Denied July 16, 2008.

462

Amy M. Snyder and Sean A. Scoopmire, both of Greenville, for Appellant/Respondent Grinnell Corporation d/b/a Grinnell Fire Protection.

David Whittington, of Summerville, for Respondent John Wood.

Peter H. Dworjanyn, of Columbia, for Respondent/Appellant American Home Assurance Company.

Stephen F. DeAntonio, of Charleston, for Respondent Government Employees Insurance Company.

ANDERSON, J.

Grinnell Corporation d/b/a Grinnell Fire Protection (Grinnell) and American Home Assurance Company (American Home) appeal from an order of the circuit court reforming an automobile insurance policy to include uninsured motorist coverage (UM) and underinsured motorist coverage (UIM) in the amount of $5,000,000. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

The parties agree to the following Stipulation of Facts and Exhibits:

1. On or about May 1, 2000, John Wood was injured in a motor vehicle accident while in the course and scope of his employment with Grinnell Corporation DBA Grinnell Fire Protection.

2. The vehicle driven by John Wood at the time of the accident was owned by Grinnell Corporation DBA Grinnell Fire Protection.

3. American Home Insurance Company (aka American Home Assurance Company and/or AIG) issued a policy of insurance to Grinnell Corporation DBA Grinnell Fire Protection, policy number RMCA5347215 providing automobile insurance coverage for vehicles owned by Grinnell Corporation DBA Grinnell Fire Protection including but not limited to the automobile involved in this accident.

4. The insurance policy in question provides for coverage limits of Five Million Dollars.

5. The documents identified as Exhibits 1, 2, and 3 attached to the stipulation of fact are agreed to by the parties to be true and accurate copies of the original documents in question and authenticated for admissibility into evidence at the hearing on this matter, said exhibits identified as follows:

   Exhibit 1—American Home Assurance Company insurance policy issued to Grinnell Corporation;

   Exhibit 2—Premium Agreement between American Home Assurance Company and Grinnell Corporation; and

   Exhibit 3—American Home Assurance Company offer/rejection form for optional UM/UIM coverage.

All issues of UIM + UM are deemed properly pleaded and raised.

On July 1, 1999, Tyco International (US) Inc. (Tyco), obtained a policy of insurance with American Home. At the time Tyco obtained the policy, Grinnell was a wholly owned subsidiary of Tyco. The policy provided commercial auto coverage

with liability limits in the amount of $5,000,000 and applied to vehicles owned and operated by Grinnell. Along with the policy, Tyco and American Home executed a "payment agreement" which required Tyco to reimburse American Home up to $500,000 for each claim American Home paid. Using a standard form, American Home made an "Offer of Additional Uninsured and Underinsured Automobile Insurance Coverages" (the Offer Form) for Tyco's South Carolina policy.

Gerald M. Goetz executed the Offer Form for Tyco's South Carolina policy. At the time, Goetz was serving as Vice President of Risk Management for Tyco. He had worked in the insurance industry as a risk manager since 1978 and earned several degrees relating to risk management. Goetz signed only the acknowledgement section of the Offer Form. He testified the Offer Form was not completed by Tyco; it was filled out by either American Home or the insurance broker.

Goetz asserted he was fully aware of Tyco's options and the nature of UM and UIM coverage when he executed the form. According to Goetz, Tyco was "effectively self-insured" due to the $500,000 deductible, and explained that Tyco would not have bought additional UM and UIM coverage under any circumstances because doing so would increase its own exposure to liability. Additionally, Goetz professed Tyco desired to purchase minimum UM and UIM coverage because it carried workers' compensation coverage for employees who might be injured while driving company vehicles.

On May 1, 2000, John Wood sustained injuries from an accident while driving a vehicle owned by Grinnell, his employer at the time. The vehicle was insured under the policy American Home issued to Grinnell.

Wood brought a claim for workers' compensation benefits against Grinnell which was paid. Wood also sought recovery under UM and UIM coverage in the case of *John Wood v. Lisa Ackerman and John Doe,* 2003–CP–08–615. In that action, which is currently pending, Wood served both American Home and Government Employees Insurance Company (GEICO), the insurance provider for his personal vehicle.

Grinnell filed this separate action against Wood, GEICO, and American Home seeking a declaratory judgment that it

had successfully rejected UIM and additional UM coverage under its policy with American Home. GEICO answered, filing a counterclaim against Grinnell and a cross-claim against American Home, asking for a reformation of Grinnell's policy to include additional UM and UIM coverage. GEICO requested a declaration that American Home is the primary insurance provider for UM and UIM coverage. Wood answered and filed a cross-claim against American Home, beseeching a reformation of the policy and damages for bad faith.

Following discovery, Grinnell, GEICO, and Wood filed motions for summary judgment on the issues of the offer of UM and UIM and reformation of the policy. American Home joined in Grinnell's motion at the hearing. The motions were heard on the stipulated facts above. The circuit court granted summary judgment to Wood and GEICO.

## *STANDARD OF REVIEW*

### I. Summary Judgment/Sufficiency of Offer

In reviewing the grant of a motion for summary judgment, the appellate court applies the same standard of review as the trial court under Rule 56, SCRCP. *Pye v. Estate of Fox,* 369 S.C. 555, 563, 633 S.E.2d 505, 509 (2006). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), SCRCP ("The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."); *Young v. South Carolina Dept. of Disabilities and Special Needs,* 374 S.C. 360, 365, 649 S.E.2d 488, 490 (2007); *Madison ex rel. Bryant v. Babcock Center, Inc.,* 371 S.C. 123, 134, 638 S.E.2d 650, 655 (2006); *Houck v. State Farm Fire & Cas. Ins. Co.,* 366 S.C. 7, 11, 620 S.E.2d 326, 329 (2005); *Bennett v. Investors Title Ins. Co.,* 370 S.C. 578, 587, 635 S.E.2d 649, 654 (Ct.App.2006); *B & B Liquors, Inc. v. O'Neil,* 361 S.C. 267, 270, 603 S.E.2d 629, 631 (Ct.App.2004). In determining whether any triable issues of fact exist, the evidence and all reasonable inferences there-

from must be viewed in the light most favorable to the non-moving party; *Law v. S.C. Dep't of Corrections,* 368 S.C. 424, 434, 629 S.E.2d 642, 648 (2006); *Medical Univ. of South Carolina v. Arnaud,* 360 S.C. 615, 619, 602 S.E.2d 747, 749 (2004); *Moore v. Weinberg,* 373 S.C. 209, 216, 644 S.E.2d 740, 743 (Ct.App.2007); *Rife v. Hitachi Constr. Mach. Co., Ltd.,* 363 S.C. 209, 213, 609 S.E.2d 565, 567 (Ct.App.2005).

"When an appeal involves stipulated or undisputed facts, an appellate court is free to review whether the trial court properly applied the law to those facts." *WDW Props. v. City of Sumter,* 342 S.C. 6, 10, 535 S.E.2d 631, 632 (2000); *Cowden Enterprises, Inc. v. East Coast Millwork Distributors,* 363 S.C. 540, 543, 611 S.E.2d 259, 260 (Ct.App.2005); *Goldston v. State Farm Mut. Auto. Ins. Co.,* 358 S.C. 157, 166, 594 S.E.2d 511, 516 (Ct.App.2004). In such cases, we are not required to defer to the circuit court's legal conclusions. *Dreher v. Dreher,* 370 S.C. 75, 79, 634 S.E.2d 646, 648 (2006); *J.K. Constr., Inc. v. W. Carolina Reg'l Sewer Auth.,* 336 S.C. 162, 166, 519 S.E.2d 561, 563 (1999); *McGirt v. Nelson,* 360 S.C. 307, 310, 599 S.E.2d 620, 622 (Ct.App.2004); *In re Estate of Boynton,* 355 S.C. 299, 301–302, 584 S.E.2d 154, 155 (Ct. App.2003).

The sufficiency of an offer of UIM or UM coverage is a question of law for the court. *See Hanover Ins. Co. v. Horace Mann Ins. Co.,* 301 S.C. 55, 389 S.E.2d 657 (1990); *Antley v. Nobel Ins. Co.,* 350 S.C. 621, 567 S.E.2d 872 (Ct.App.2002); *Bower v. Nat'l Gen. Ins. Co.,* 342 S.C. 315, 536 S.E.2d 693 (Ct.App.2000), *aff'd,* 351 S.C. 112, 569 S.E.2d 313 (2002).

## II. Statutory Construction

The issue of interpretation of a statute is a question of law for the court. *Univ. of S. California v. Moran,* 365 S.C. 270, 275, 617 S.E.2d 135, 137 (Ct.App.2005); *see also Catawba Indian Tribe of South Carolina v. State of South Carolina,* 372 S.C. 519, 524, 642 S.E.2d 751, 753 (2007), *cert. denied,* Oct. 1, 2007; *Charleston County Parks & Recreation Comm'n v. Somers,* 319 S.C. 65, 67, 459 S.E.2d 841, 843 (1995).

The cardinal rule of statutory interpretation is to determine the intent of the legislature. *Bass v. Isochem,* 365

S.C. 454, 459, 617 S.E.2d 369, 377 (Ct.App.2005), *cert. dismissed as improvidently granted,* 374 S.C. 346, 649 S.E.2d 485 (2007); *Georgia–Carolina Bail Bonds, Inc. v. County of Aiken,* 354 S.C. 18, 22, 579 S.E.2d 334, 336 (Ct.App.2003); *Smith v. S.C. Ins. Co.,* 350 S.C. 82, 87, 564 S.E.2d 358, 361 (Ct.App. 2002); *see also Gordon v. Phillips Utils., Inc.,* 362 S.C. 403, 406, 608 S.E.2d 425, 427 (2005) ("The primary purpose in construing a statute is to ascertain legislative intent."). All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute. *McClanahan v. Richland County Council,* 350 S.C. 433, 438, 567 S.E.2d 240, 242 (2002); *Ray Bell Constr. Co. v. Sch. Dist. of Greenville County,* 331 S.C. 19, 26, 501 S.E.2d 725, 729 (1998); *State v. Morgan,* 352 S.C. 359, 365–66, 574 S.E.2d 203, 206 (Ct.App. 2002); *State v. Hudson,* 336 S.C. 237, 246, 519 S.E.2d 577, 581 (Ct.App.1999). "Once the legislature has made [a] choice, there is no room for the courts to impose a different judgment based upon their own notions of public policy." *S.C. Farm Bureau Mut. Ins. Co. v. Mumford,* 299 S.C. 14, 19, 382 S.E.2d 11, 14 (Ct.App.1989).

The legislature's intent should be ascertained primarily from the plain language of the statute. *State v. Landis,* 362 S.C. 97, 102, 606 S.E.2d 503, 505 (Ct.App.2004); *Morgan,* 352 S.C. at 366, 574 S.E.2d at 206; *Stephen v. Avins Constr. Co.,* 324 S.C. 334, 339, 478 S.E.2d 74, 77 (Ct.App.1996). The language must be read in a sense which harmonizes with its subject matter and accords with its general purpose. *Mun. Ass'n of S.C. v. AT&T Commc'ns of S. States, Inc.,* 361 S.C. 576, 580, 606 S.E.2d 468, 470 (2004); *Hitachi Data Sys. Corp. v. Leatherman,* 309 S.C. 174, 178, 420 S.E.2d 843, 846 (1992); *Morgan,* 352 S.C. at 366, 574 S.E.2d at 206; *Hudson,* 336 S.C. at 246, 519 S.E.2d at 582.

When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction and a court must apply the statute according to its literal meaning. *Miller v. Aiken,* 364 S.C. 303, 307, 613 S.E.2d 364, 366 (2005); *Carolina Power & Light Co. v. City of Bennettsville,* 314 S.C. 137, 139, 442 S.E.2d 177, 179 (1994). If a statute's language is unambiguous and clear, there is no need to employ the rules of

statutory construction and this Court has no right to look for or impose another meaning. *Tilley v. Pacesetter Corp.*, 355 S.C. 361, 373, 585 S.E.2d 292, 298 (2003); *Paschal v. State Election Comm'n*, 317 S.C. 434, 436, 454 S.E.2d 890, 892 (1995); *see also City of Camden v. Brassell*, 326 S.C. 556, 561, 486 S.E.2d 492, 495 (Ct.App.1997) ("Where the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it which are not in the legislature's language."). What a legislature says in the text of a statute is considered the best evidence of the legislative intent or will. *Bayle v. S.C. Dep't of Transp.*, 344 S.C. 115, 122, 542 S.E.2d 736, 740 (Ct.App.2001). The words of a statute must be given their plain and ordinary meaning without resorting to subtle or forced construction. *Durham v. United Cos. Fin. Corp.*, 331 S.C. 600, 604, 503 S.E.2d 465, 468 (1998); *Adkins v. Comcar Indus., Inc.*, 323 S.C. 409, 411, 475 S.E.2d 762, 763 (1996); *Worsley Cos. v. S.C. Dep't of Health & Envtl. Control*, 351 S.C. 97, 102, 567 S.E.2d 907, 910 (Ct.App.2002); *see also Timmons v. S.C. Tricentennial Comm'n*, 254 S.C. 378, 402, 175 S.E.2d 805, 817 (1970) (observing that where the language of the statute is clear and explicit, the court cannot rewrite the statute and inject matters into it that are not in the legislature's language). Under the plain meaning rule, it is not the court's place to change the meaning of a clear and unambiguous statute. *Hodges v. Rainey*, 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000); *Bayle*, 344 S.C. at 122, 542 S.E.2d at 739.

If the language of an act gives rise to doubt or uncertainty as to legislative intent, the construing court may search for that intent beyond the borders of the act itself. *Morgan*, 352 S.C. at 367, 574 S.E.2d at 207; *see also Wade v. Berkeley County*, 348 S.C. 224, 229, 559 S.E.2d 586, 588 (2002) ("[W]here a statute is ambiguous, the Court must construe the terms of the statute."). An ambiguity in a statute should be resolved in favor of a just, beneficial, and equitable operation of the law. *Hudson*, 336 S.C. at 247, 519 S.E.2d at 582; *Brassell*, 326 S.C. at 561, 486 S.E.2d at 495; *City of Sumter Police Dep't v. One (1) 1992 Blue Mazda Truck*, 330 S.C. 371, 376, 498 S.E.2d 894, 896 (Ct.App.1998). In construing a statute, the court looks to the language as a whole in light of its manifest purpose. *State v. Dawkins*, 352 S.C. 162, 166, 573 S.E.2d 783, 785 (2002); *Adams v. Texfi Indus.*, 320 S.C. 213,

217, 464 S.E.2d 109, 112 (1995); *Brassell,* 326 S.C. at 560, 486 S.E.2d at 494.

■ A statute as a whole must receive a practical, reasonable, and fair interpretation consonant with the purpose, design, and policy of the lawmakers. *See Liberty Mut. Ins. Co. v. S.C. Second Injury Fund,* 363 S.C. 612, 621, 611 S.E.2d 297, 301 (Ct.App.2005), *cert. denied,* June 2007; *see also Georgia–Carolina Bail Bonds,* 354 S.C. at 22, 579 S.E.2d at 336 ("A statute should be given a reasonable and practical construction consistent with the purpose and policy expressed in the statute."). The real purpose and intent of the lawmakers will prevail over the literal import of the words. *Browning v. Hartvigsen,* 307 S.C. 122, 125, 414 S.E.2d 115, 117 (1992).

■ Courts will reject a statutory interpretation which would lead to a result so plainly absurd that it could not have been intended by the legislature or would defeat the plain legislative intention. *Unisun Ins. Co. v. Schmidt,* 339 S.C. 362, 368, 529 S.E.2d 280, 283 (2000); *Kiriakides v. United Artists Commc'ns, Inc.,* 312 S.C. 271, 275, 440 S.E.2d 364, 366 (1994). A court should not consider a particular clause in a statute as being construed in isolation, but should read it in conjunction with the purpose of the whole statute and the policy of the law. *See Liberty Mut. Ins. Co.,* 363 S.C. at 622, 611 S.E.2d at 302; *see also Mid–State Auto Auction v. Altman,* 324 S.C. 65, 69, 476 S.E.2d 690, 692 (1996) (stating that in ascertaining the intent of the legislature, a court should not focus on any single section or provision but should consider the language of the statute as a whole).

### *LAW/ANALYSIS*

Grinnell and American Home argue the offer of additional UM and UIM was a meaningful offer, and concomitantly the circuit court erred in reforming the policy. We disagree.

■ In addition to mandatory UM coverage, automobile insurance carriers must offer the insured additional UM and UIM coverage. S.C.Code Ann. § 38–77–160 (2002).

Automobile insurance carriers shall offer, at the option of the insured, uninsured motorist coverage up to the limits of the insured's liability coverage in addition to the mandatory

coverage prescribed by Section 38–77–150. Such carriers shall also offer, at the option of the insured, underinsured motorist coverage up to the limits of the insured liability coverage to provide coverage in the event that damages are sustained in excess of the liability limits carried by an at-fault insured or underinsured motorist or in excess of any damages cap or limitation imposed by statute. . . .

*Id.* "The purpose of requiring automobile insurers to make a meaningful offer of additional UM or UIM coverage 'is for insureds to know their options and to make an informed decision as to which amount of coverage will best suit their needs.'" *Floyd v. Nationwide Mut. Ins. Co.,* 367 S.C. 253, 262–263, 626 S.E.2d 6, 12 (2005) (citing *Progressive Cas. Ins. Co. v. Leachman,* 362 S.C. 344, 352, 608 S.E.2d 569, 573 (2005)).

■■■■■■ An offer of additional UM and UIM "must be an effective offer that is meaningful to the insured." *Todd v. Federated Mut. Ins. Co.,* 305 S.C. 395, 398, 409 S.E.2d 361, 364 (1991) (citing *Dewart v. State Farm Mut. Auto. Ins. Co.,* 296 S.C. 150, 370 S.E.2d 915 (Ct.App.1988)). "A noncomplying offer has the legal effect of no offer at all." *Progressive,* 362 S.C. at 349, 608 S.E.2d at 571. *Hanover Ins. Co. v. Horace Mann Ins. Co.,* 301 S.C. 55, 57, 389 S.E.2d 657, 659 (1990). "If the insurer fails to comply with its statutory duty to make a meaningful offer to the insured, the policy will be reformed, by operation of law, to include UIM coverage up to the limits of liability insurance carried by the insured." *Butler v. Unisun Ins. Co.,* 323 S.C. 402, 405, 475 S.E.2d 758, 760 (1996). *Burch v. South Carolina Farm Bureau Mut. Ins. Co.,* 351 S.C. 342, 345, 569 S.E.2d 400, 402 (Ct.App.2002).

■■■■ The Supreme Court of South Carolina adopted a four-part test for determining the sufficiency of an offer of additional UM and UIM in *State Farm Mutual Auto. Ins. Co. v. Wannamaker,* 291 S.C. 518, 521, 354 S.E.2d 555, 556 (1987). The court elucidated that an offer of additional UM and UIM coverage is meaningful if:

(1) the insurer's notification process is commercially reasonable, whether oral or in writing; (2) the insurer must specify the limits of optional coverage and not merely offer additional coverage in general terms; (3) the insurer must

intelligibly advise the insured of the nature of the optional coverage; and (4) the insured must be told that optional coverages are available for an additional premium.

*Id.; Progressive* 362 S.C. at 349, 608 S.E.2d at 571. "The insurer must satisfy all four prongs of the *Wannamaker* test to prove there was an effective offer of underinsured motorist coverage, and failure of any one of these prongs vitiates the offer and requires reformation of the policy to include underinsured motorist coverage to the limits of liability." *Ackerman v. Travelers Indem. Co.,* 318 S.C. 137, 144, 456 S.E.2d 408, 411 (Ct.App.1995) (citing *Dewart* 296 S.C. 150, 370 S.E.2d 915). "The insurer bears the burden of establishing that it made a meaningful offer." *Progressive* 362 S.C. at 348–49, 608 S.E.2d at 571. *Butler,* 323 S.C. at 405, 475 S.E.2d at 759.

In response to the *Wannamaker* decision, the legislature passed section 38–77–350, which establishes the requirements for forms used in making offers of optional insurance coverages. *Progressive,* 362 S.C. at 349, 608 S.E.2d at 571. "[W]hen enacting section 38–77–350, the Legislature did not intend to repeal section 38–77–160." *Butler,* 323 S.C. at 407, 475 S.E.2d at 761. Section 38–77–350(A) states:

The director or his designee shall approve a form that automobile insurers shall use in offering optional coverages required to be offered pursuant to law to applicants for automobile insurance policies. This form must be used by insurers for all new applicants. The form, at a minimum, must provide for each optional coverage required to be offered:

(1) a brief and concise explanation of the coverage,

(2) a list of available limits and the range of premiums for the limits,

(3) a space for the insured to mark whether the insured chooses to accept or reject the coverage and a space for the insured to select the limits of coverage he desires,

(4) a space for the insured to sign the form which acknowledges that he has been offered the optional coverages,

(5) the mailing address and telephone number of the Insurance Department which the applicant may contact if the

applicant has any questions that the insurance agent is unable to answer.

S.C.Code Ann. § 38–77–350(A) (2002).

If the insurer's form complies with these requirements, section 38–77–350(B) provides a conclusive presumption.

If this form is properly completed and executed by the named insured it is conclusively presumed that there was an informed, knowing selection of coverage and neither the insurance company nor any insurance agent has any liability to the named insured or any other insured under the policy for the insured's failure to purchase any option coverages or higher limits.

S.C.Code Ann. § 38–77–350(B) (2002) [1]. "If the form does not comply with the statute, the insurer may not benefit from the protections of the statute." *Progressive,* 362 S.C. at 349, 608 S.E.2d at 572 (citing *Osborne v. Allstate Ins. Co.,* 319 S.C. 479, 486, 462 S.E.2d 291, 295 (Ct.App.1995)).

Grinnell concedes the offer form fails to meet the requirements of section 38–77–350(A), so the conclusive presumption of section 38–77–350(B) does not apply. An insurer's failure to comply with section 38–77–350 does not necessarily presage the lack of a meaningful offer. *See Butler* 323 S.C. 402, 475 S.E.2d 758. The insurer still has an opportunity to prove an offer is meaningful under the requirements of *Wannamaker. See Antley,* 350 S.C. at 633, 567 S.E.2d at 878. "Whether a meaningful offer was made depends on the facts and circumstances of a particular case." *Croft v. Old Republic Ins. Co.,* 365 S.C. 402, 420, 618 S.E.2d 909, 918 (2005).

Grinnell and American Home assert that while the offer form fails to meet the requirements of 38–77–350(A), the offer form still meets the requirements of *Wannamaker.* We disagree.

It is axiomatic that a form which fails under the requirements of section 38–77–350(A) would not meet the requirements of *Wannamaker* without evidence outside of the

---

[1]. This section was amended with an effective date of June 14, 2006, but the amendment would not affect our analysis of the form as it was executed on July 1, 1999.

offer form. Section 38–77–350(A) sets forth the minimum requirements of a form offering optional coverage. *Butler* 323 S.C. at 408, 475 S.E.2d at 761. "[A] form does not necessarily constitute a meaningful offer simply because it was approved by the Department of Insurance." *Floyd*, 367 S.C. at 262, 626 S.E.2d at 12. To meet its burden of proof, an insurer must provide evidence outside of the offer form itself to prove satisfaction of the *Wannamaker* test.

An illustration of this principle can be seen in *McDowell v. Travelers Property & Casualty Company*, 357 S.C. 118, 590 S.E.2d 514 (Ct.App.2003). In *McDowell* an employee sought reformation of his employer's policy on the ground that there was not a meaningful offer of additional UM and UIM coverage. *Id.* This court conducted a *Wannamaker* analysis after concluding the offer form did not meet the requirements of section 38–77–350(A). *Id.* We ruled the insurer had made a meaningful offer because the contract between the parties provided the necessary information which was missing from the offer form. *Id.* at 124, 590 S.E.2d at 517 ("McDowell's only contention under the *Wannamaker* analysis is that Travelers failed to provide the premium amounts for the optional UIM coverage. Although the offer form contained no premium amounts in the blanks provided, the contractual agreement between Goodyear and Travelers includes a detailed formula for calculating the premium for UIM coverage."). Essentially, the contract "cured" the offer form's insufficiency. However, without the contract, the insurer would not have provided the necessary information.

The present case is distinguishable from *McDowell*. In *McDowell*, the sole deficiency was the offer form's failure to provide premium amounts. Id. This court determined the offer was still meaningful under *Wannamaker* because premiums could be established from the parties' contract. *Id.* In the case *sub judice*, the offer form had several shortcomings; there is no evidence American Home cured these defects by providing the necessary information in some other way.

While the form stated that additional coverage was available up to the policy limits, *the actual offers* of optional coverages printed on the form were for amounts far less that the $5,000,000 policy limit. The increased premium charges were

left blank even though the form itself states that they must be completed. The form had been filled out to state that "Single Limit[s]" of additional coverage were selected, which is clearly inconsistent with a denial of additional coverage. Lastly, the form required signatures next to the boxes where the insured elects not to choose optional coverage, but no one signed those blanks.

To illustrate the offer form was a meaningful offer, Grinnell and American Home point to evidence of Grinnell's level of sophistication and understanding of UM and UIM insurance coverage.

> [E]vidence of the insureds [sic] knowledge or level of sophistication is relevant and admissible when analyzing, under *Wannamaker*, whether an insurer intelligibly advised the insured of the nature of the optional UM or UIM coverage. It is a subjective inquiry to the extent the insured may offer evidence of his understanding, or lack thereof, of the nature of UM or UIM coverage. It also is an objective inquiry because the factfinder should consider the insureds [sic] knowledge and level of sophistication in determining whether the insurer intelligibly explained such coverage to the insured.

*Croft v. Old Republic Ins. Co.*, 365 S.C. 402, 420–21, 618 S.E.2d 909, 918 (2005).

Some of the omissions in the offer form cannot be reconciled regardless of how sophisticated the insured may be. For example, the actual offers of optional coverages were for amounts far less than the $5,000,000 policy limit, and the form had been filled out to state that "Single Limit[s]" of additional coverage were selected. Such serious errors may not be mitigated by the insured's stature. The sophistication level of the insured, while relevant to the sufficiency of the advice given by the insurer, does not completely relax the requirement that an insurer make a meaningful offer of additional UM and UIM coverage. Indeed, insurers are required to make a meaningful offer to even the most sophisticated parties because "the Legislature has recognized that commercial insureds, like non-commercial insureds, undoubtedly run the gamut from the ill-informed to knowledgeable purchasers." *Id.* at 420, 618 S.E.2d at 918.

## CONCLUSION

We hold that American Home did not make a meaningful offer of additional UM and UIM. We rule the circuit court properly reformed the policy of insurance to include UM and UIM coverage in the amount of the policy limits.

Accordingly, the order of the circuit court is

**AFFIRMED.**

THOMAS, J., concurs.

SHORT, J., dissents in a separate opinion.

SHORT, J., (dissenting):

I respectfully dissent.

The majority opinion distinguishes the facts and circumstances of this case from those in this court's opinion in *McDowell v. Travelers Property & Casualty Company*, 357 S.C. 118, 590 S.E.2d 514 (Ct.App.2003). I conclude *McDowell* applies and would reverse the trial court's reformation of the parties' contract.

In *McDowell*, this court found a meaningful offer despite the failure of the offer form to meet the *Wannamaker* test. *Id. See State Farm Mut. Auto. Ins. Co. v. Wannamaker*, 291 S.C. 518, 521, 354 S.E.2d 555, 556 (1987) (adopting a four-part test for determining the sufficiency of an offer of optional UM and UIM). The court noted that failure to meet the statutory requirements "does not necessarily require reformation of the policy. Rather, the insurer bears the burden of establishing it made a meaning offer...." *McDowell*, 357 S.C. at 123, 590 S.E.2d at 516. I find the insurer met that burden in this case.

In the typical case, the insured is the party seeking reformation. This case presents the more unusual circumstance of the insured arguing the offer was meaningful and a third party seeking reformation. Under the parties' payment agreement, Tyco is essentially self-insured for the first $500,000 of a claim. Gerald Goetz, the Vice President of Risk Management for Tyco, clarified the valid business purpose for denying optional UM and UIM. Goetz explained that Tyco would not have bought additional UM and UIM because doing so would expose it to additional liability. Gerald Goetz assert-

ed he was knowledgeable and aware of his options when declining additional UM and UIM. Goetz had worked in the insurance industry as a risk manager for over thirty years and had extensive education relating to risk management.

I would find Goetz made a knowing and informed decision in rejecting the optional coverage. *See id.* at 124–25, 590 S.E.2d at 517 (finding the risk manager made a knowing and informed decision). Furthermore, like the court in *McDowell,* I would consider the arrangement between the contracting parties in this case and conclude the insurer met its burden of proving it made a meaningful offer to Tyco. Moreover, Goetz's sophistication is a factor to consider in determining whether Tyco received a meaningful offer. *See Anders v. S.C. Farm Bureau Mut. Ins. Co.,* 307 S.C. 371, 376, 415 S.E.2d 406, 409 (Ct.App.1992) (finding the sophistication of the insured is a factor that may be considered in determining if an offer of optional insurance is meaningful).

Although this offer may not have been meaningful to the typical insured, under these circumstances, considering the sophistication of the insured, I find the offer meaningful. *See Croft v. Old Republic Ins. Co.,* 365 S.C. 402, 420, 618 S.E.2d 909, 918 (2005) (stating "[w]hether a meaningful offer was made depends on the facts and circumstances of a particular case"). Accordingly, I would reverse.