533 S.E.2d 591

**The STATE, Respondent,**

v.

**Albert GARVIN, Appellant.**

**No. 3130.**

Court of Appeals of South Carolina.

Heard Dec. 8, 1999.
Decided March 13, 2000.
Rehearing Denied Sept. 2, 2000.

---

Assistant Appellate Defender Tara S. Taggart, of S.C. Office of Appellate Defense, of Columbia, for appellant.

Attorney General Charles M. Condon, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott and Senior Assistant Attorney General Norman Mark Rapoport, all of Columbia; and Solicitor Randolph Murdaugh, III, of Hampton, for respondent.

HOWARD, Judge:

Albert Garvin appeals his conviction for resisting arrest/assaulting an officer in violation of S.C.Code Ann. § 16–9–320(B) (Supp.1999). We affirm.

## FACTS/PROCEDURAL HISTORY

On November 27, 1997, Beaufort County Narcotics Detective Jeffrey Light arrested Garvin and placed him in jail. Upon arrest, Garvin vowed to "get even" with Light. He did not post bond, so he remained in jail. Two days later, Light procured additional arrest warrants for Garvin. A detention officer escorted Garvin from the Beaufort County Detention Center holding area into the adjacent municipal courtroom, where he was served with the additional warrants. The detention officer then took Garvin before the municipal judge for a bond hearing. Detective Light and his supervisor were in the courtroom.

Garvin insisted the municipal judge call his uncle, allegedly a judicial officer from a neighboring county. When the judge refused, Garvin became hostile and verbally abusive. According to Detective Light, the custodial officer tried to escort Garvin from the courtroom to the holding cells. Instead of leaving, however, Garvin confronted Light's supervisor, shouting at him. Detective Light then stood up to assist the detention officer, whereupon Garvin struck him in the face. Garvin continued to struggle, running from the detention officer toward the holding cells. Garvin was eventually subdued by several detention officers, and returned to his jail cell. Both Light and his supervisor received injuries from the encounter and required hospital treatment.

As a result of the incident, Garvin was indicted and tried for resisting arrest/assaulting an officer in violation of S.C.Code Ann. § 16–9–320(B) (Supp.1999). Garvin appeals his conviction, arguing the trial court erred by refusing to grant his motions for directed verdict. We affirm.

## LAW/ANALYSIS

■ Garvin asserts the trial court erred in denying his motion for a directed verdict because there was no evidence the officer Garvin allegedly assaulted was either attempting to arrest him or effecting process, as required by the statute. We disagree.

■ In reviewing the denial of a motion for a directed verdict, the evidence must be viewed in the light most favor-

able to the State. *State v. Kelsey,* 331 S.C. 50, 502 S.E.2d 63 (1998). "[I]f there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find that the case was properly submitted to the jury." *State v. Rowell,* 326 S.C. 313, 315, 487 S.E.2d 185, 186 (1997). Although the trial court should not refuse to grant the motion where the evidence merely raises a suspicion of the accused's guilt, the case must be submitted to the jury if substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt can be fairly and logically deduced, exists. *Id.* The trial court is required, however, to direct a verdict when a material element of an offense is absent. *State v. Gore,* 318 S.C. 157, 456 S.E.2d 419 (Ct.App.1995).

The statutory subsection under which Garvin was convicted provides:

It is unlawful for a person to knowingly and wilfully assault, beat, or wound a law enforcement officer engaged in serving, executing, or attempting to serve or execute a legal writ or process or to assault, beat, or wound an officer when the person is resisting an arrest being made by one whom the person knows or reasonably should know is a law enforcement officer, whether under process or not.

S.C.Code Ann. § 16–9–320(B) (Supp.1999).

Garvin argues his conviction can not stand because there is no evidence that the assault on Detective Light took place either while Garvin was resisting arrest or while Detective Light was attempting to effect process. We disagree with this assessment.

Although Garvin was in pre-trial confinement at the time of his arrest on the new charges, the law required that he be formally arrested and given an opportunity for bail, notwithstanding his inability to post bail on the existing charges. S.C.Code Ann. § 22–5–510(B)(Supp.1999). Consequently, the law required the arresting officer to serve Garvin with the new warrants and bring him before the magistrate, as was done in this case.

Garvin had just been served with the new arrest warrants and brought before the magistrate for the setting of bond when the incident occurred. He had not been placed in

confinement on the new charges in a cell at the jail. He assaulted two police officers, both of whom were known to him as law enforcement officers. Although these officers did not serve the warrants and did not have custody of Garvin, they came to the aid of the custodial officer when Garvin resisted her authority.

This case is controlled by *State v. Dowd*, 306 S.C. 268, 411 S.E.2d 428 (1991). In *Dowd*, the defendant was taken into custody at the roadside. He was taken to a room at the city jail where the Breathalyzer test was administered. He was then "booked" into the jail. Only after these interim stops was he taken to his jail cell. The resistance to arrest occurred as he was being placed in the cell. Our supreme court held that the arrest was not complete at that stage, even though the defendant had been taken into custody at the roadside. In reaching this result, the court cited with approval the North Carolina case of *State v. Leak*, 11 N.C.App. 344, 181 S.E.2d 224 (1971). The facts in *Leak* are similar to the facts in this case.

In *Leak*, the defendant was placed into custody and taken before the magistrate for service of the warrant and setting of bail. As the arresting officers escorted him from the courtroom to the jail cell, Leak assaulted the officer. The court described the issue as follows:

> Defendant contends that at the time he was in the magistrate's office his arrest had been consummated, that the acts alleged to have occurred between the magistrate's office and the jail were not in connection with his arrest, therefore, he was not guilty of resisting arrest. We do not agree with this contention.

*Leak*, 181 S.E.2d at 225–26.

The court defined arrest, quoting from *Hadley v. Tinnin*, 170 N.C. 84, 86 S.E. 1017 (1915), as follows:

> The term "arrest" has a technical meaning, applicable in legal proceedings. It implies that a person is thereby restrained of his liberty by some officer or agent of the law, armed with lawful process, authorizing and requiring the arrest to be made. It is intended to serve, and does serve, the end of bringing the person arrested personally within

the custody and control of the law, for the purpose specified in, or contemplated by, the process.

*Id.* at 226. The court then concluded that "[t]he arrest of defendant in the instant case did not terminate until he was delivered to the jailer and properly confined." *Id.*

As in *Dowd* and *Leak*, Garvin's arrest on the new charges had not been consummated at the time of the assault. Until officers had completed their task of confining Garvin within the jail cell, Garvin had not been brought within the custody and control of the law for the purpose specified in, or contemplated by, the process. Garvin's assault upon Detective Light and his supervisor, both clearly known to him as law enforcement officers, was in connection with this arrest. *See Stevenson v. State*, 335 S.C. 193, 516 S.E.2d 434 (1999) (offense of resisting arrest requires proof that a person knowingly and wilfully assaulted, beat, or wounded a law enforcement officer during an arrest when the person resisting knew or should have known the officer was a law enforcement officer). For this reason, we affirm his conviction.

**AFFIRMED.**

HEARN, C.J., and CURETON, J., concur.