606 S.E.2d 503

**The STATE, Respondent,**

v.

**Harley L. LANDIS, Appellant.**

**No. 3904.**

Court of Appeals of South Carolina.

Heard Nov. 9, 2004.

Decided Dec. 6, 2004.

Jeffrey Falkner Wilkes, of Greenville, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General Deborah R.J. Shupe, all of Columbia; and Solicitor Robert M. Ariail, of Greenville, for Respondent.

ANDERSON, J.:

In this criminal action, Harley L. Landis (Landis) appeals his conviction for driving under the influence (DUI). We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On November 27, 2000, South Carolina Highway Patrol Trooper David Davis (Trooper Davis) observed a vehicle driven by Landis headed northbound on Interstate 85. Landis was weaving and straddling the center lane. A State Transport Police Officer had taken a position immediately behind

Landis' vehicle. The State Transport Police Officer initiated blue lights and pulled Landis over to the side of the interstate. Trooper Davis then pulled behind the Transport Police Officer. After the Transport Officer removed Landis from his car, Trooper Davis performed the field sobriety test, determined Landis was impaired, and placed him under arrest for DUI. There was no videotape of the incident site because Trooper Davis' videotape machine was inoperable at the time of Landis' arrest.

Landis was convicted by a magistrate's court jury and fined $637. On appeal, the circuit court affirmed the conviction and sentence of Landis.

## STANDARD OF REVIEW

"In criminal appeals from magistrate or municipal court, the circuit court does not conduct a *de novo* review, but instead reviews for preserved error raised to it by appropriate exception." *State v. Henderson*, 347 S.C. 455, 457, 556 S.E.2d 691, 692 (Ct.App.2001); *accord Rogers v. State*, 358 S.C. 266, 594 S.E.2d 278 (2004) (quoting *City of Landrum v. Sarratt*, 352 S.C. 139, 141, 572 S.E.2d 476, 477 (Ct.App.2002)). In criminal cases, the court of appeals sits to review errors of law only and is bound by the factual findings of the trial court unless clearly erroneous. *State v. Wilson*, 345 S.C. 1, 545 S.E.2d 827 (2001); *State v. Cutter*, 261 S.C. 140, 199 S.E.2d 61 (1973); *State v. Bowie*, 360 S.C. 210, 600 S.E.2d 112 (Ct.App. 2004).

## LAW/ANALYSIS

Landis contends the circuit court erred in affirming his conviction because the State failed to comply with the mandatory provisions of section 56–5–2953 of the South Carolina Code (Supp.2001) requiring videotaping at the incident site. Landis presents two arguments supporting his position. First, he argues the circuit court erred in finding that Trooper Davis constituted the arresting officer as contemplated by section 56–5–2953. Second, Landis alleges the circuit court

erred in finding that the affidavit requirement of section 56–5–2953(B) was satisfied by the State. We disagree and affirm.

The cardinal rule of statutory construction is to ascertain and effectuate the legislative intent whenever possible. *State v. Morgan,* 352 S.C. 359, 574 S.E.2d 203 (Ct.App. 2002) (citing *State v. Baucom,* 340 S.C. 339, 531 S.E.2d 922 (2000)). All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute. *State v. Hudson,* 336 S.C. 237, 519 S.E.2d 577 (Ct.App.1999) *cert. denied as improvidently granted, State v. Hudson,* 346 S.C. 139, 551 S.E.2d 253 (2001). The determination of legislative intent is a matter of law. *Hudson,* 336 S.C. 237, 519 S.E.2d 577.

The legislature's intent should be ascertained primarily from the plain language of the statute. *Morgan* at 366, 574 S.E.2d 203, 547 S.E.2d at 206. Words must be given their plain and ordinary meaning without resorting to subtle or forced construction which limits or expands the statute's operation. *Id.* When faced with an undefined statutory term, the court must interpret the term in accord with its usual and customary meaning. *Id.* This Court must apply clear and unambiguous terms of a statute according to their literal meaning. *State v. Blackmon,* 304 S.C. 270, 403 S.E.2d 660 (1991). We should consider, not merely the language of the particular clause being construed, but the word and its meaning in conjunction with the purpose of the whole statute and the policy of the law. *Whitner v. State,* 328 S.C. 1, 492 S.E.2d 777 (1997). The terms must be construed in context and their meaning determined by looking at the other terms used in the statute. *Hudson,* 336 S.C. 237, 519 S.E.2d 577.

When a statute's language is plain and unambiguous, and conveys clear and definite meaning, there is no occasion for employing rules of statutory interpretation and a court has no right to look for or impose another meaning. *City of Camden v. Brassell,* 326 S.C. 556, 486 S.E.2d 492 (Ct.App.1997). The statute as a whole must receive a prac-

tical, reasonable, and fair interpretation consonant with the purpose, design, and policy of lawmakers. *Id.* Any ambiguity in a statute should be resolved in favor of a just, equitable, and beneficial operation of the law. *Id.; City of Sumter Police Dep't v. One 1992 Blue Mazda Truck,* 330 S.C. 371, 498 S.E.2d 894 (Ct.App.1998).

## I. Arresting Officer

 Landis asserts the State Transport Police Officer—not Trooper Davis—was the arresting officer at the incident site. Consequently, Landis contends that any effort by the State to comply with the statutory requirements of section 56–5–2953 must be met by the State Transport Officer as the arresting officer. The circuit court found Trooper Davis, not the State Transport Officer, was the arresting officer pursuant to section 56–5–2953. We agree.

Section 56–7–2953 provides, in pertinent part:

(A) A person who violates Section 56–5–2930, 56–5–2933, or 56–5–2945 must have his conduct at the incident site and the breath test site videotaped.

(1) The videotaping at the incident site must:

(a) begin not later than the activation of the officer's blue lights and conclude after the arrest of the person for a violation of Section 56–5–2930, 56–5–2933, or a probable cause determination that the person violated Section 56–5–2945. . . .

. . . .

(B). . . . **Failure by the *arresting officer* to produce the videotapes** required by this section **is not alone a ground for dismissal** of any charge made pursuant to Section 56–5–2930, 56–5–2933, or 56–5–2945 **if the arresting officer submits a sworn affidavit**. . . .

S.C.Code Ann. (Supp.2001) (emphasis added).

The statute does not define "arresting officer." Consequently, we must interpret this phrase in accord with its usual

and customary meaning. *See City of Camden v. Brassell,* 326 S.C. 556, 486 S.E.2d 492 (Ct.App.1997) (stating when legislature elects not to define a term in a statute, courts will interpret term in accord with its usual and customary meaning).

Pellucidly, the record supports the finding that Trooper Davis was the "arresting officer" as that phrase is ordinarily understood. Trooper Davis personally observed Landis' driving prior to the traffic stop. He arrived at the scene simultaneously with the State Transport Officer. Trooper Davis pulled in directly behind the Transport Officer and approached just after Landis had been removed from his vehicle. Moreover, Trooper Davis conducted the field sobriety test, determined Landis was impaired, and **placed him under arrest** for DUI.

In *State v. Garvin,* 341 S.C. 122, 533 S.E.2d 591 (Ct.App. 2000), we noted:

> The term "arrest" has a technical meaning, applicable in legal proceedings. It implies that a person is thereby restrained of his liberty by some officer or agent of the law, armed with lawful process, authorizing and requiring the arrest to be made. It is intended to serve, and does serve, the end of bringing the person arrested personally within the custody and control of the law, for the purpose specified in, or contemplated by, the process.

*Id.* at 126–27, 533 S.E.2d at 593 (quoting *State v. Leak,* 11 N.C.App. 344, 181 S.E.2d 224 (1971)). Trooper Davis "restrained [Landis] of his liberty" and brought him "within the custody and control of the law." Therefore, we hold that the State Transport Officer merely assisted in facilitating the traffic stop. Trooper Davis was the arresting officer responsible for meeting the statutory videotaping requirements of section 56–5–2953(A).

## II. Videotaping Requirements

Landis argues the State failed to comply with the videotape requirements of the incident scene contained in

section 56–5–2953(A) of the South Carolina Code (Supp.2001). Specifically, Landis contends the circuit court erred in affirming his conviction because the affidavit prepared by Trooper Davis was not entered into evidence at trial. We disagree.

Section 56–5–2953(A) provides that a person charged with driving under the influence shall have "his conduct at the incident site and the breath test site videotaped." Videotaping at the incident site must begin not later than the activation of the officer's blue lights and conclude after the arrest of the person. S.C.Code Ann. section 56–5–2953(A)(1)(a) (Supp. 2001). While Trooper Davis was unable to videotape the arrest due to the inoperable condition of his videotape equipment, section 56–5–2953(B) clearly envisions instances where videotape might not be available at the incident site and provides:

Nothing in this section may be construed as prohibiting the introduction of other evidence in the trial of a violation of Section 56–5–2930, 56–5–2933, or 56–5–2945. **Failure by the arresting officer to produce the videotapes required by this section is not alone a ground for dismissal of any charge made pursuant to Section 56–5–2930, 56–5–2933, or 56–5–2945 if the arresting officer submits a sworn affidavit certifying that the videotape equipment at the time of the arrest, probable cause determination, or breath test device was in an inoperable condition, stating reasonable efforts have been made to maintain the equipment in an operable condition, and certifying that there was no other operable breath test facility available in the county** or, in the alternative, submits a sworn affidavit certifying that it was physically impossible to produce the videotape because the person needed emergency medical treatment, or exigent circumstances existed. Further, in circumstances including, but not limited to, road blocks, traffic accident investigations, and citizens' arrests, where an arrest has been made and the videotaping equipment has not been activated by blue lights, the failure by the arresting officer to produce the videotapes required by this section is not alone a ground for dismissal. However, as soon as videotaping is practicable in these circumstances,

videotaping must begin and conform with the provisions of this section. Nothing in this section prohibits the court from considering any other valid reason for the failure to produce the videotape based upon the totality of the circumstances; nor do the provisions of this section prohibit the person from offering evidence relating to the arresting law enforcement officer's failure to produce the videotape.

S.C.Code Ann. section 56–5–2953(B) (Supp.2001) (emphasis added).

In accordance with section 56–5–2953(B), Trooper Davis prepared a sworn affidavit certifying that his videotape equipment was inoperable at the time of the arrest despite reasonable efforts to repair the equipment. Trooper Davis testified at trial to the existence of the affidavit:

**Q:** Was your car equipped with video at this time?

**A:** It was, but it was inoperable at the time.

. . . .

**Q:** And pursuant to section [56–5–2953] did you sign an affidavit for failure to produce videotape indicating that your videotaping machine was inoperable?

**A:** Yes, I did.

Moreover, Landis' counsel was provided a copy of Trooper Davis' affidavit.

**Counsel for Landis:** I haven't seen any Affidavit. I'm assuming you will be admitting it.

**State:** I thought you were given a copy.

**Counsel:** I don't think so.

**State:** That was done today.

**Counsel:** Oh, Okay.

. . . .

**Counsel:** That's fine. I just needed to see it.

Indeed, Landis used the affidavit during cross-examination of Trooper Davis. And during the motion hearing, Landis'

counsel requested to enter the affidavit into evidence but decided to wait until trial to admit the document.

**Counsel for Landis:** Can we put the Affidavit in as an exhibit?

**The Court:** Sure.

**State:** If counsel wants to put the Affidavit into evidence in his trial, then (inaudible)

**Counsel:** I think we're entitled to introduce that at this time for the record on our motion. It is not something that—

**State:** You want to introduce it for purposes in the motion?

**Counsel:** Well, we need it for purposes of the motion, but I guess we can—we'll do it at trial. We'll hang on to it and just go ahead and admit it during the trial itself.

In further refutation of Landis' argument, the record discloses that not only was Landis' counsel in possession of Trooper Davis' affidavit, but the court accepted counsel's request to place the affidavit into evidence. Landis' counsel then decided not to enter the affidavit after the court had given him permission to do so. Although the statute does not specify to whom the arresting officer should submit the affidavit, we hold that whether the affidavit has been submitted is not an issue when it has undisputedly been prepared and is in defense counsel's possession at trial.

Based on the cited testimony and Trooper Davis' affidavit, we hold the statutory requirements of section 56–5–2953(B) were satisfied.

### CONCLUSION

Therefore, the order of the circuit court is hereby

**AFFIRMED.**

STILWELL and SHORT, JJ., concur.