649 S.E.2d 172

**In the Matter of the Care and Treatment of Kenneth J. WHITE, Respondent,**

v.

**The STATE of South Carolina, Appellant.**

**No. 4277.**

Court of Appeals of South Carolina.

Submitted May 1, 2007.

Decided July 18, 2007.

Rehearing Denied Aug. 24, 2007.

Assistant Appellate Defender Lanelle C. Durant, of Columbia for Respondent.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Attorney Gen-

eral Deborah R.J. Shupe and Assistant Attorney General R. Westmoreland Clarkson, all of Columbia, for Appellant.

WILLIAMS, J.

On July 5, 2005, the State commenced an action pursuant to the South Carolina Sexually Violent Predator Act (the Act),[1] alleging Kenneth White (White) met the statutory criteria for confinement as a sexually violent predator. Based on the Act, the State sought White's commitment in a secure facility for long-term care, control, and treatment. The circuit court found no probable cause existed to establish White was a sexually violent predator and accordingly dismissed the action. We reverse and remand.

## FACTS

White has a long history of sexually violent behavior toward women. In July 2002, White entered his victim's home, forced her into a bedroom, and used aggravated force to rape her. Based on this incident, he was arrested and charged with criminal sexual conduct in the first degree. White pled guilty to criminal sexual conduct in the second degree and was sentenced to ten years in prison, suspended to six months with a five-year probation period.

In January 2004, White sexually assaulted his former girl-friend at his residence. White asked the victim to come to his house, but when she arrived, he became increasingly angry with the victim for ending their relationship. He then threw her on the bed, choked her, and sexually assaulted her. White was again charged with criminal sexual conduct in the first degree. White entered a *nolo contendre* plea to criminal sexual conduct in the third degree and was sentenced to five years in prison, suspended to fourteen months with a five-year probation period.

Before White's release, the Director of the Department of Corrections notified the Attorney General and the multidisciplinary team that White, as a potential sexually violent predator, was to be released from confinement. The multidisciplinary team reviewed his case and determined White satisfied the

---

1. S.C.Code Ann. § 44–48–10 et seq. (Supp.2006).

definition of a sexually violent predator. Thereafter, the prosecutor's review committee reviewed the multidisciplinary team's recommendation and found probable cause to believe White was a sexually violent predator.

Based on the multidisciplinary team's and the prosecutor's review committee's recommendations, the State filed a petition in circuit court to commit White to the South Carolina Department of Mental Health. The circuit court found the petition set forth sufficient facts to establish probable cause that White met the statutory criteria for commitment. The circuit court subsequently held a probable cause hearing.

At the probable cause hearing, in addition to the July 2002 and January 2004 convictions, the State attempted to supplement its petition with: (1) incident reports showing White repeatedly stalked, sexually assaulted, and threatened a third victim over a five-year period, which resulted in White being charged and arrested for unlawful use of a telephone, harassment, violation of a restraining order, and assault; (2) an incident report that charged White with raping a fourth victim whom he had stalked for over a year and a half; and (3) a statement from the mother of White's son who claimed their relationship was "filled with lies, deception, control, physical and mental abuse, and continued infidelity" and "if released, [White] pose[d] an extreme danger to society."

White objected to the introduction of the documents detailing these offenses on the grounds that the incidents did not result in convictions, and only conduct resulting in criminal convictions may be considered under the Act. The circuit court sustained this objection.

In response, the State argued that even if the circuit court considered only White's two convictions, his conduct met the diagnostic criteria for sexual paraphilia as set forth in the fourth edition of the Diagnostic and Statistical Manual of Mental Disorders (DSM–IV). The State then attempted to admit a copy of the definition of sexual paraphilia from the DSM–IV into evidence, but White objected, claiming no basis existed to submit the document. The State argued because the DSM–IV is a recognized treatise and because the Act expressly allows documentary evidence to be considered at a

probable cause hearing, the document should be admitted. However, the court disagreed and sustained White's objection.

The circuit court held the State failed to establish probable cause to commit White under the Act and dismissed the case. This appeal follows.

## LAW/ANALYSIS

By way of background, the Act provides for the involuntary civil commitment of sexually violent predators who are "mentally abnormal and extremely dangerous." § 44–48–20. To determine whether a person can be committed as a sexually violent predator under the Act, a series of steps must occur. First, the multidisciplinary team, appointed by the Director of the Department of Corrections, must determine whether the person meets the definition of a sexually violent predator.[2] § 44–48–50. The multidisciplinary team may rely on the person's records, which "include, but are not limited to, the person's criminal offense record, any relevant medical and psychological records, treatment records, victim's impact statement, and any disciplinary or other records formulated during confinement or supervision." *Id.*

If the multidisciplinary team finds the person meets the definition of a sexually violent predator, it then refers the case to the prosecutor's review committee. *Id.* Relying on the person's relevant records and the multidisciplinary team's recommendation, the prosecutor's review committee must determine whether probable cause exists to commit the person as a sexually violent predator. § 44–48–60. If the prosecutor's review committee determines probable cause is present, the Attorney General may file a petition in circuit court to request a probable cause hearing. § 44–48–70.

At the probable cause hearing, the court considers the State's petition, which may be supplemented by additional documentary evidence or live testimony. § 44–48–80(B). If probable cause exists, the person is transferred to a secure

---

**2.** Under the Act, a "sexually violent predator" is a person who (1) has been convicted of a sexually violent offense; and (2) suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment. § 44–48–30(1).

facility for evaluation by a court-approved qualified expert. § 44–48–80(D). Within sixty days of the probable cause hearing, a trial must be conducted, at which the State must convince the court or jury beyond a reasonable doubt that the person is a sexually violent predator. § 44–48–90.

The State first argues the circuit court erred when it refused to consider White's past unadjudicated sexual offenses at the probable cause hearing. In response, White argues only conduct resulting in criminal convictions may be taken into account at the probable cause hearing because the Act is triggered only by such conduct. We agree with the State.

The Act does not specifically define whether the circuit court can consider a person's "criminal offense record" at the probable cause hearing, nor does the Act specify what "offenses" the circuit court can consider. § 44–48–80. As such, we must first resolve whether the circuit court can rely on a person's criminal offense record. If so, we must then determine what offenses the circuit court can permissibly consider in its probable cause determination.

In construing a statute, this Court should not consider the particular clause being construed in isolation, but we should read the clause in conjunction with the purpose of the whole statute and the policy of the law. *South Carolina Coastal Council v. South Carolina State Ethics Comm'n,* 306 S.C. 41, 44, 410 S.E.2d 245, 247 (1991). Statutory provisions should be given a reasonable construction consistent with the purpose of the statute. *Jackson v. Charleston County Sch. Dist.,* 316 S.C. 177, 181, 447 S.E.2d 859, 861 (1994). Statutes that are part of the same act must be read together. *Burns v. State Farm Mut. Auto. Ins. Co.,* 297 S.C. 520, 522, 377 S.E.2d 569, 570 (1989). Statutes must be read as a whole and sections that are part of the same general statutory scheme must be construed together and each given effect, if reasonable. *Higgins v. State,* 307 S.C. 446, 449, 415 S.E.2d 799, 801 (1992).

The Act states that a "person's records," including a "person's criminal offense record," may be considered by the multidisciplinary team and the prosecutor's review committee in determining whether a person is a sexually violent predator. § 44–48–50. The State's petition, submitted to the circuit

court at the probable cause hearing, is based in part on the recommendations and reports of the multidisciplinary team and the prosecutor's review committee. §§ 44–48–50 to –80. The Act does not explicitly limit the multidisciplinary team and the prosecutor's review committee to considering only convictions when they make their respective decisions. §§ 44–48–50, 44–48–60. By reading these statutes together, if the circuit court can consider the State's petition at a probable cause hearing, it follows that the circuit court can likewise consider any prior relevant offenses, which may be contained in the State's petition.

Because the circuit court can take into account relevant criminal offenses, we must next determine what offenses are appropriate to consider. Based on our review, we find "offense" to mean either (1) convictions and crimes not resulting in convictions or (2) only convictions. Consequently, this term in the Act is ambiguous.

The cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the legislature. *Hodges v. Rainey,* 341 S.C. 79, 85, 533 S.E.2d 578, 581 (2000). When a statute's terms are clear and unambiguous on their face, there is no room for statutory construction, and a court must apply the statute according to its literal meaning. *Univ. of S. California v. Moran,* 365 S.C. 270, 276, 617 S.E.2d 135, 138 (Ct.App.2005). However, when the legislature chooses not to define a term in a statute, courts will interpret the term in accord with its usual and customary meaning. *City of Camden v. Brassell,* 326 S.C. 556, 560, 486 S.E.2d 492, 494 (Ct.App. 1997) (citations omitted).

As "offense" is not defined in the Act, the term's customary and usual meaning is instructive in ascertaining the legislature's intent. Offense is commonly defined as "a violation of the law; a crime, often a minor one." *Black's Law Dictionary* 885 (7th ed.2000). Further, "the terms 'crime,' 'offense,' and 'criminal offense' are all said to be synonymous, and ordinarily used interchangeably." 22 C.J.S. *Criminal Law* § 3 (2007). Distinguished from a crime or offense, a conviction is "[t]he act or process of judicially finding someone guilty of a crime [or][t]he judgment ... that a person is guilty of a crime." *Black's Law Dictionary* 271 (7th ed.2000). It follows that

while a conviction cannot occur without the commission of an offense, an offense can occur without necessarily resulting in a conviction. As such, both convictions and offenses not resulting in convictions can be considered under the Act based on the term's usual and customary meaning.

Because the legislature fails to limit or is silent on whether offenses can include only convictions, we must assume the legislature intended to include both convictions and offenses not resulting in convictions. *Cf. State v. Prince*, 335 S.C. 466, 475–76, 517 S.E.2d 229, 234 (Ct.App.1999) (In finding that an "act of violence" can include an act against property under this State's aggravated stalking statute, this Court held, "[T]hat our legislature specifically chose not to define 'act of violence' buttresses our conclusion. Had the legislature intended for that term to be defined narrowly, it could easily have inserted limiting language. Instead, there is no limitation on the term. We decline to impliedly limit our statutory scheme to acts of bodily injury when the legislature expressly did not do so.").

Further, our Act is modeled after Kansas' Sexually Violent Predator Act, so we find Kansas' treatment of this matter to be illustrative. *In re Matthews*, 345 S.C. 638, 649, 550 S.E.2d 311, 316 (2001) (stating South Carolina's Act is based on Kansas' Sexually Violent Predator Act). In *Matter of Hay*, the defendant challenged the introduction of prior uncharged conduct at his trial for civil commitment as a sexually violent predator, claiming it was inadmissible. 263 Kan. 822, 953 P.2d 666, 677 (1998). The Kansas Supreme Court admitted the evidence, finding it was either a necessary element of the charged conduct or relevant, despite its prejudicial nature, to the ultimate issue. *Id.* The court held, "[E]vidence of prior conduct, charged and uncharged, [is] material evidence in [a sexual predator] case." *Id.* at 678. In buttressing its conclusion, the court also stated, "In assessing whether an individual is a sexually violent predator, prior sexual history is highly probative of his or her propensity for future violence." *Id.* (citation omitted).

Similarly, our Supreme Court has stated that "past criminal history is directly relevant" to proving a person is a sexually violent predator. *In re Corley*, 353 S.C. 202, 206, 577 S.E.2d 451, 453 (2003). Further, "a person's dangerous propensities

are the focus of the ... Act," so admission of previous offenses that are similar to one another is proper when directly relevant to the ultimate issue. *Corley*, 353 S.C. at 206–07, 577 S.E.2d at 453–54.

■ In this case, evidence of White's criminal sexual offenses not resulting in convictions was directly relevant to the circuit court's probable cause determination.[3] Consequently, we find the circuit court erred when it refused to admit White's previous unadjudicated offenses into evidence.

■ The State also avers that the circuit court erred when it dismissed this action based on its finding that no probable cause existed to establish White is a sexually violent predator. We agree.

■ On appeal, this Court will not disturb the circuit court's finding on probable cause unless found to be without evidence that reasonably supports the circuit court's finding. *In re Tucker*, 353 S.C. 466, 470, 578 S.E.2d 719, 721 (2003).

The State petitioned the circuit court to determine whether probable cause existed to believe White was a sexually violent predator. As stated earlier, a "sexually violent predator" is a person who (1) has been convicted of a sexually violent offense; and (2) suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for long-term control, care, and treatment. § 44–48–30(1)(a) & (b).

In this case, it is undisputed that White satisfies the first prong of section 44–48–30(1). His previous convictions for second and third degree criminal sexual conduct are qualifying offenses under the Act. § 44–48–30(2)(b) & (c). Thus, the determinate factor is whether he suffers from a mental abnormality such that he is likely to commit acts of sexual violence in the future.

■ At the probable cause hearing, the State attempted to introduce evidence that White suffers from sexual paraphilia[4]

___

3. In so holding, we are not stating past convictions and prior offenses not resulting in convictions that have no bearing on whether a person is a sexually violent predator should be admissible.

4. Sexual paraphilia involves "recurrent, intense sexually arousing fantasies, sexual urges, or behaviors generally involving ... the suffering

based on the diagnostic criteria set forth in the DSM–IV.[5] We initially note the circuit court properly excluded the DSM–IV as the State failed to lay the proper foundation for its admission. The State's attempt to introduce a photocopied definition of sexual paraphilia as "what a doctor's probable diagnosis would be" was improper without additional corroborating evidence or testimony from an expert or witness. *See* Rule 803(18), SCRE (stating that a learned treatise is admissible if "established as a reliable authority by the testimony or admission of the witness or by other expert testimony or by judicial notice."). To indicate that White suffers from the specific sexual disorder of sexual paraphilia without further testimony or evidence mandates the exclusion of the DSM–IV.[6]

Although the circuit court excluded the DSM–IV, the State proffered evidence to establish probable cause. First, the State presented White's two previous convictions, both of which involved nonconsenting victims and were of a sexually violent nature. Further, the State attempted to introduce numerous documents regarding White's unadjudicated assaults against other nonconsenting female victims. His unadjudicated conduct and convictions establish a reasonable basis to believe that White suffers from some type of mental abnormality or personality disorder. As such, the second prong of section 44–48–30(1) is satisfied.

---

or humiliation of ... nonconsenting persons ... that occur over a period of at least 6 months." DSM–IV 566 (4th ed.1994).

5.  The DSM–IV is an authoritative resource in diagnosing mental abnormalities and personality disorders. *See Moriarty v. Garden Sanctuary Church of God*, 334 S.C. 150, 159, 511 S.E.2d 699, 704 (Ct.App.1999) (The "(DSM–IV) ... is a widely used manual by psychiatrists to define mental diagnostic categories and is published by the American Psychiatric Association.").

6.  Despite the exclusion of the DSM–IV, we believe a finding of probable cause is consistent with prior South Carolina case law. In *In re Care and Treatment of Beaver v. State*, our Supreme Court stated the circuit court erred in holding the State failed to provide sufficient evidence to show the defendant suffered from a mental abnormality. Specifically, the Supreme Court stated that "the State's inability to provide mental health evidence does not prevent a finding of probable cause." 372 S.C. 272, 278, 642 S.E.2d 578, 582 (2007).

Accordingly, the circuit court's finding of no probable cause is not supported by the evidence.

## CONCLUSION

The circuit court committed reversible error when it excluded the State's evidence regarding White's past unadjudicated offenses. Because the Act does not expressly prohibit the introduction of prior offenses that are relevant to determining whether a person is a sexually violent predator, it was error to exclude this evidence.

Because the evidence supports a finding of probable cause, we reverse and remand to the circuit court. On remand, the circuit court shall direct that White be transferred to an appropriate secure facility for evaluation by a court-approved qualified expert.

**REVERSED and REMANDED.**[7]

HUFF and BEATTY, JJ., concur.

---

7. We decide this case without oral argument pursuant to Rule 215, SCACR.