# THE STATE OF SOUTH CAROLINA
## In The Court of Appeals

The State, Respondent,

v.

Kyle Maurice Robinson, Appellant.

Appellate Case No. 2019-001256

———————————

Appeal From York County
William A. McKinnon, Circuit Court Judge

———————————

Opinion No. 5930
Heard June 16, 2022 – Filed August 3, 2022

———————————

**AFFIRMED**

———————————

Appellate Defender Susan Barber Hackett, of Columbia,
for Appellant.

Attorney General Alan McCrory Wilson and Senior
Assistant Deputy Attorney General William M. Blitch,
Jr., both of Columbia; and Solicitor Kevin Scott Brackett,
of York, all for Respondent.

———————————

**WILLIAMS, C.J.:** In this criminal appeal, Kyle Maurice Robinson argues the
trial court erred in failing to grant his motion for a directed verdict. Specifically,
Robinson argues that under subsection 16-3-600(C)(1)(a)(i) of the South Carolina
Code (2015), the State failed to produce any evidence proving he injured a minor
and therefore failed to prove an essential element of assault and battery in the first
degree. We affirm.

**FACTS/PROCEDURAL HISTORY**

On July 27, 2017, a sixteen-year-old minor (Minor) was at home watching her younger sister while her mother and live-in grandparents were at work. In the late afternoon, Minor and her sister were playing cards when they noticed a car parked in front of their house. Minor went to the front door to see who was in the car. It was Robinson, and he exited the car and asked Minor if his daughter was there.[1] Minor informed Robinson his daughter was not home, and Robinson asked if he could use Minor's bathroom.

Minor agreed and claimed that when she pointed to the bathroom, Robinson requested she walk with him. When she escorted Robinson to the bathroom, he grabbed her by the shirt, pulled her into the bathroom, and backed her into a corner after she refused to enter the bathroom with him voluntarily. Minor testified that as Robinson backed her into the corner, he had his left hand around her neck to press her against the wall but he was not choking her. Minor admitted having Robinson's hand around her neck was uncomfortable but it was not squeezing her, just holding her in place. She stated he was groping her breasts with his free hand. After Minor yelled, "Get the f*** off of me," Robinson released her neck, began "tugging" at her shorts, and exclaimed "I have $60 if you let me do you."

Minor testified that during the altercation, she noticed Robinson was sweating profusely and appeared to be intoxicated. Robinson ended the molestation when he heard Minor's younger sister walking down the hall. Minor's sister stated that she heard Minor exclaim "Stop, stop" from the bathroom. Robinson then ran out of the bathroom, exited the house, and drove off. Several minutes later, Minor's brother returned home, and the two of them called their mother after Minor told him what happened. Upon arrival, Minor's mother called the police, and they arrested Robinson within walking distance of Minor's home approximately half an hour later. Officer Jerry Sanders testified he observed and photographed Minor's neck at the scene. Officer Sanders stated Minor's neck was uninjured and was not reddened.

In December 2017, a York County grand jury indicted Robinson for criminal solicitation of a minor, and in July 2019, it indicted Robinson for assault and battery in the first degree. At trial, after the State rested, Robinson moved for a directed verdict on the first-degree assault and battery charge. Robinson argued that under subsection 16-3-600(C)(1)(a)(i), the State failed to provide evidence that

---

[1] Robinson's daughter was Minor's cousin and also lived in Minor's home.

Minor was physically injured from the encounter with Robinson. Specifically, Robinson asserted that to submit the charge to the jury, the subsection required the State prove an actual, physical injury in addition to a nonconsensual touching of an individual's private parts. Read in unison with the remainder of the statute's subsections that define and require a physical injury, Robinson claimed the term "injures" under subsection 16-3-600(C)(1)(a)(i) must be construed to require some physical injury rather than a nebulous, legal injury. Robinson claimed an injury is "any physical harm or irritation or ailment."

The trial court denied Robinson's motion, finding the statute only calls for a legal injury in conjunction with the nonconsensual touching of an individual's private parts. After admitting its confusion as to why the legislature set forth two separate requirements under the first-degree assault and battery subsection, the court stated that lacking further guidance from appellate courts, it would interpret the term "injures" in the traditional legal sense. It found that "nonconsensual touching is a legal injury and does not require some sort of vital injury."

Robinson did not raise a defense at trial, and the jury found him guilty of both charges. The trial court sentenced Robinson to five years' imprisonment for each charge and mandatory registration as a sex offender for each charge. This appeal followed.

## ISSUE ON APPEAL

Did the trial court err in refusing to grant Robinson's motion for a directed verdict because the State failed to produce any evidence that Robinson physically injured Minor under subsection 16-3-600(C)(1)(a)(i)?[2]

## STANDARD OF REVIEW

When reviewing a motion for a directed verdict, appellate courts view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *State v. Harris*, 413 S.C. 454, 457, 776 S.E.2d 365, 366 (2015). If direct or substantial circumstantial evidence exists that tends to prove the guilt of the accused, appellate courts must affirm the trial court's decision to submit the case to the jury. *Id.*

---

[2] Robinson did not appeal his conviction for criminal solicitation of a minor and the mandatory registration as a sex offender for that crime.

**LAW/ANALYSIS**

Robinson claims the trial court erred in refusing to grant his motion for a directed verdict as to his first-degree assault and battery charge because the State failed to prove he injured Minor as required under the statute. He asserts that under subsection 16-3-600(C)(1)(a)(i), the term "injures" requires the State prove an actual, physical injury in addition to nonconsensual touching of the victim's private parts. We disagree and affirm.

This case presents an issue of first impression. This court must define and give effect to the term injures for purposes of first-degree assault and battery. In pertinent part, the statute provides, "A person commits the offense of assault and battery in the first degree if the person unlawfully: (a) *injures* another person, *and* the act: (i) involves nonconsensual touching of the private parts of a person, either under or above clothing, with lewd and lascivious intent . . . ."
§ 16-3-600(C)(1)(a)(i) (emphases added).

"The cardinal rule of statutory construction is to ascertain and effectuate the legislative intent whenever possible." *State v. Landis*, 362 S.C. 97, 102, 606 S.E.2d 503, 505 (Ct. App. 2004). "All rules of statutory construction are subservient to the one that legislative intent must prevail if it can be reasonably discovered in the language used, and that language must be construed in the light of the intended purpose of the statute." *Id.* Appellate courts do not construe particular clauses of a statute in isolation but read them "in conjunction with the purpose of the whole statute and the policy of the law." *White v. State*, 375 S.C. 1, 7, 649 S.E.2d 172, 175 (Ct. App. 2007). "The legislature's intent should be ascertained primarily from the plain language of the statute." *Landis*, 362 S.C. at 102, 606 S.E.2d at 505. "Words must be given their plain and ordinary meaning without resorting to subtle or forced construction which limits or expands the statute's operation. When faced with an undefined statutory term, the court must interpret the term in accord with its usual and customary meaning." *Id.* (citation omitted).

The Legislature uses inconsistent language throughout Title 16, Chapter 3 of the South Carolina Code to define specific elements required to constitute an offense against an individual's person, especially when the element requires an "injury." For instance, assault and battery by mob requires an "act of violence" be "inflicted by a mob *upon the body* of another person." S.C. Code Ann. § 16-3-210 (2015) (emphasis added). Further, an individual is only guilty of hazing if he intentionally or recklessly commits an act that has a foreseeable potential to cause "*physical*

*harm to a person* for the purpose of initiation or admission" into an organization. S.C. Code Ann. § 16-3-510 (2015) (emphasis added). Even defined terms under the assault and battery statute are inconsistent. *Compare* S.C. Code Ann. § 16-3-600(A)(1) (2015) ("'Great bodily injury' means *bodily injury* which causes . . . ." (emphasis added)), *with* S.C. Code Ann. § 16-3-600(A)(2) (2015) ("'Moderate bodily injury" means *physical injury* that involves . . . ." (emphasis added)).

In spite of these inconsistencies, the plain language of subsection 16-3-600(C)(1)(a)(i) is clear in defining what constitutes assault and battery in the first degree. Despite Robinson's assertion that the statute requires the State prove two separate elements, we find the statute requires one injury stemming from a single act and that the Legislature intended the single act that caused the injury to "involve[] nonconsensual touching of the private parts of a person . . . with lewd and lascivious intent." § 16-3-600(C)(1)(a)(i). Robinson argues that because the Legislature followed the term "injures" with the conjunction "and," it intended to create a conjunctive list that establishes two distinct elements for the State to satisfy to prove assault and battery in the first degree—(1) a physical injury and (2) a separate, nonconsensual touching of the victim's private parts with lewd intent. Contrarily, after a plain reading of the subsection, it is evident the Legislature included "and" to further modify and define the nature of the act that caused the injury it intended to constitute assault and battery in the first degree.

Robinson also argues that because the Legislature defined "great bodily harm" and "moderate bodily harm" to include physical, bodily injury, it also intended "injures" as used in the subsection to require a physical, bodily injury. This interpretation tortures any plain reading of the statute and would severely limit the statute's breadth. *See Landis*, 362 S.C. at 102, 606 S.E.2d at 505 ("Words must be given their plain and ordinary meaning without resorting to subtle or forced construction which limits or expands the statute's operation."). The expression of a clear definition requiring a bodily injury for certain categories of assault and battery implies the exclusion of that requirement for the categories that do not have such a clear definition. *See Hainer v. Am. Med. Int'l, Inc.*, 328 S.C. 128, 134, 492 S.E.2d 103, 106 (1997) (stating that if the Legislature had intended a result in a statute, it would have said so).

Our interpretation of the subsection—requiring only a single injury occurring from a single nonconsensual touching of an individual's private parts—agrees with the other portions of the statute and is supported by the traditional understanding of assault and battery as delineated by our courts for over a century. Moreover, when

read in conjunction with the remaining subsections, this interpretation is aligned with the Legislature's intent in enacting the statute as a whole. *See White*, 375 S.C. at 7, 649 S.E.2d at 175 (stating appellate courts do not construe particular clauses of a statute in isolation but read them "in conjunction with the purpose of the whole statute and the policy of the law"). In each subsection, the Legislature uses varying degrees to define the type of injury that must occur to constitute that level of assault and battery. For instance, to be convicted of assault and battery of a high and aggravated nature (ABHAN), an individual must "unlawfully injure[] another person" and the type of injury is one that meets the definition of "great bodily injury" (as defined in the statute) or the act that caused the injury "is accomplished by means likely to produce death or great bodily injury." *See* S.C. Code Ann. § 16-3-600(B)(1) (2015). Similarly, an individual is guilty of assault and battery in the second degree if he "unlawfully injures another person, or offers or attempts to injure another person with the present ability to do so" and either (1) moderate bodily injury results or could have resulted from the act that caused the injury or (2) "the act involves the nonconsensual touching of the private parts of a person." *See* S.C. Code Ann. § 16-3-600(D)(1) (2015). Each subsection either defines the harm caused by a defendant's act upon the victim's person or the nature of the act itself—e.g. a nonconsensual touching of another's private parts with lewd intentions.

Although we acknowledge the enactment of the Omnibus Crime Reduction and Sentencing Reform Act of 2010 (the Act) "abolished all common law assault and battery offenses and all prior statutory assault and battery offenses," our jurisprudence offers insight as to the requirements of assault and battery in the first degree. *State v. Middleton*, 407 S.C. 312, 315, 755 S.E.2d 432, 434 (2014). Historically, assault was defined as "an unlawful attempt, coupled with a present ability, to commit a violent injury upon the person of another" and a battery was the "successful accomplishment of such [an] attempt." *State v. Jones*, 133 S.C. 167, 179, 130 S.E. 747, 751 (1925), *overruled on other grounds by State v. Foust*, 325 S.C. 12, 479 S.E.2d 50 (1996). Until the Act was ratified, ABHAN was "an unlawful act of violent injury to the person of another, accompanied by circumstances of aggravation, such as . . . *indecent liberties or familiarities with a female*." *Id.* (emphasis added). Under the aggravating circumstance of indecent liberties, our supreme court upheld a defendant's conviction for ABHAN when the defendant caused a female victim to stop her car, then reached in with both hands to grab her saying, "I want you," and brushed her neck with his hand as she sped away. *State v. Williams*, 257 S.C. 257, 264, 185 S.E.2d 529, 532 (1971). In *State v. Cunningham*, the supreme court upheld a defendant's conviction for ABHAN when the defendant grabbed the victim by the wrist, threw her onto her bed, held

her hands together while removing her underwear, and attempted to have sex with her. 253 S.C. 388, 392, 171 S.E.2d 159, 161 (1969). Finally, in *State v. Rouse*, our supreme court affirmed the trial court's denial of the defendant's motion for a directed verdict and affirmed his conviction for ABHAN when the evidence showed the defendant made brief physical contact with the victim "in an offer of sexual intercourse" and "made indecent sexual demonstrations with the exposed private parts of his body." 262 S.C. 581, 584–85, 206 S.E.2d 873, 874–75 (1974). None of these cases contained evidence that the victims' persons were physically harmed or violently injured.

Here, we find Robinson's actions fall squarely within the definition of assault and battery in the first degree under our interpretation of the subsection. Minor testified Robinson backed her into a corner while holding her in place with his left hand. She also claimed that while she was forced against the wall, Robinson groped her breasts with his free hand. After screaming for Robinson to get off of her, Robinson let go of Minor's throat, attempted to remove her shorts, and offered her money to have sex with him. As evidenced by Minor's exclamation for Robinson to get off of her, his actions were nonconsensual and clearly the object of the groping was Minor's breasts, which satisfies the definition of "private parts" as set forth by the statute. *See* S.C. Code Ann. § 16-3-600(A)(3) (2015) ("'Private parts' means the genital area or buttocks of a male or female or the breasts of a female."). Further, the evidence shows Robinson's intent in calling Minor to the bathroom and forcing her into the corner was lewd and lascivious because he offered her money to have sex, revealing an overt sexual desire. Although Minor testified that Robinson did not hurt her, only that his hand around her neck was "uncomfortable," a physical, bodily injury is not required for an individual to be guilty of assault and battery in the first degree under subsection 16-3-600(C)(1)(a)(i). Because (1) our interpretation of the subsection appears to be consistent with the remainder of the statute, (2) our jurisprudence has never required an actual, physical injury to a victim's person to constitute an assault and battery, and (3) the nature of Robinson's actions falls squarely within the definition of first-degree assault and battery, we find the trial court did not err in denying Robinson's motion for a directed verdict.

**CONCLUSION**

Based on the foregoing, Robinson's conviction for assault and battery in the first degree is

**AFFIRMED.**

**KONDUROS and VINSON, JJ., concur.**